In the Matter of ELECTROLUX CORPORATION, Respondent.
FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

Argued June 8, 1942; decided July 29, 1942.

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, W. Gerard Ryan* and *Francis R. Curran* of counsel), for appellant. The

lower court erred in reversing the determination since the conclusion that an employer-employee relationship existed is supported by substantial legal evidence and was, therefore, conclusive upon the court. (*Matter of Chetney* v. *Manning Co.,* 273 N. Y. 82; *Matter of Dubinsky* v. *Kofsky,* 266 N. Y. 631; *Matter of Konieczny* v. *Kresse Co.,* 234 App. Div. 517; *Matter of Love* v. *Thatcher Mfg. Co.,* 251 App. Div. 47; *Matter of Glielmi* v. *Netherland Dairy Co.,* 254 N. Y. 60; *Matter of Morton,* 284 N. Y. 167; *Continental Oil Co.* v. *Jones,* 113 Fed. Rep. [2d] 557; *Groves* v. *Commissioner,* 99 Fed. Rep. [2d] 179; *Morsman* v. *Commissioner,* 90 Fed. Rep. [2d] 18; *Gregory* v. *Helvering,* 293 U. S. 465; *Matter of Gold* v. *Wooters,* 233 App. Div. 883.)

*Harold L. Smith, William K. Dupre, Richard W. Hogue, Jr.,* and *A. Ross Jones* for respondent. The decision of the Appellate Division should be affirmed because the decision of the Appeal Board is not supported by any substantial evidence. (*Matter of Morton,* 284 N. Y. 167; *Matter of Beach* v. *Velzy,* 238 N. Y. 100; *Strayer* v. *Gimbel Bros.,* 172 Wis. 76; *Nicoll* v. *Sands,* 131 N. Y. 19; *Griffith* v. *Electrolux Corporation,* 176 Va. 378; *Schomp* v. *Fuller Brush Co.,* 124 N. J. L. 487; 126 N. J. L. 368; *Matter of Levine* v. *Aluminum Cooking Utensil Co.,* 258 App. Div. 1023; 283 N. Y. 577; *Matter of Alford* v. *Aluminum Cooking Utensil Co.,* 260 App. Div. 826; 286 N. Y. 651; *Jenkins* v. *Moyse,* 254 N. Y. 319; *Howitt* v. *Hopkins,* 219 App. Div. 653; 246 N. Y. 604.)

FINCH, J. The question presented for decision upon this appeal is whether the decision of the Unemployment Insurance Appeal Board, which affirmed the decision of the referee that the salesmen of Electrolux Corporation are employees within the meaning of the unemployment insurance law (Labor Law, art. 18; Cons. Laws, ch. 31), is supported by substantial evidence and, therefore, conclusive upon the courts.

The appeal arises in a proceeding initiated by Electrolux Corporation to have determined its liability under the unemployment insurance law to make contributions with respect to the earnings of its sales representatives. This proceeding has already been before this court upon a prior appeal (286 N. Y. 390), in which this court remitted the case to the Appellate Division for

a decision upon the merits. The Appellate Division by a divided court has determined that respondent's sales representatives are independent contractors as a matter of law, and that respondent, therefore, is not liable to make contributions based upon their earnings.

The Industrial Commissioner has also brought here for review adverse determinations of the Appellate Division in four proceedings initiated by individual claimants who had formerly been sales representatives for Electrolux. (See *Matter of Geoghegan* and *Tenenbaum; Matter of Nowicki* and *Matter of Riggi*, 289 N. Y. ——, ——, ——, decided herewith.) These proceedings, with the exception of that involving claimant Tenenbaum, concededly raise the same question of law as that presented by this appeal. In the case of claimant Tenenbaum, however, respondent corporation raised upon the hearing before the referee the additional issue whether this claimant had been gainfully employed during the period when he was registered with his local board as totally unemployed. Since the proceeding had been commenced to determine solely the question of the coverage of this claimant by the provisions of the unemployment insurance law, the referee did not decide the additional issue raised by the respondent but referred this matter to the claimant's local board for consideration. Respondent corporation contends that this additional issue must be passed upon here because, unless it is established that this claimant is in fact entitled to unemployment insurance benefits, his appeal presents only an academic question. This contention would appear to have been finally answered by this court upon the prior appeal in the principal case, when it held that a proceeding confined solely to the issue of coverage presents a question for review by the courts although no liability as to contributions has been fixed therein. There is no additional issue, therefore, to be passed upon in the case of claimant Tenenbaum.

The power of the courts to review the question here presented is, of course, very restricted in scope. Section 534 of the unemployment insurance law (Labor Law, art. 18, § 534) provides that: " A decision of the appeal board shall be final on all questions of fact, and, unless appealed from, shall be final on all questions of law."

*Matter of Morton* (284 N. Y. 167, 169) defined the function of the courts under this statute in the following words: " The question to be reviewed by us is not whether claimant was an employee of respondent as a matter of fact, but whether upon the basis of the record before us we must decide as a matter of law that claimant was not an employee."

The scope of judicial review of quasi-judicial administrative action was set forth in *Matter of Stork Restaurant, Inc., v. Boland* (282 N. Y. 256, 267), where we said " where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board."

Before July 1, 1938 respondent operated in New York State through a subsidiary, Electrolux, Inc. Respondent corporation confined itself to manufacturing vacuum cleaners at Old Greenwich, Connecticut, while the function of its subsidiary corporation was to market the product in this State. Electrolux, Inc., was concededly subject to the unemployment insurance law of this State and made contributions into the Unemployment Insurance Fund based on the earnings of its salesmen. As of July 1, 1938, upon the dissolution of Electrolux, Inc., respondent corporation began to market its product directly within this State. Upon commencing selling operations, respondent corporation entered into new written contracts with its salesmen which were deliberately framed to take the latter outside of the provisions of the unemployment insurance law. These contracts, entered into with each of approximately 850 salesmen individually, are known as sales representatives agreements. Clause 9 thereof provides that, while respondent may from time to time suggest to the representative methods of handling and selling its product, the representative reserves the right to accept or reject such suggestions, with the exception of the terms, conditions and limitations contained in the agreement, and to conduct his business and devote such time thereto as he deems advisable and conducive to the best results. Printed settlement records are used for computation of the salesman's weekly commissions and these contain the statement that representatives are independent contractors without being under limitation or requirement as to itineraries, volume of business, hours, selling

methods, written or other reports, collection of accounts, investigation of complaints, adjustments, sales meetings, conferences or consultations. Furthermore, a group bonding plan is provided by respondent in connection with the requirement that all its sales representatives be bonded. Representatives who file written applications for inclusion within the group plan describe themselves as "independent contractor-consignees." Finally, in the contracts entered into between respondent and the sales managers in charge of its branch offices, clause ten thereof provides that any instructions given by the sales managers to representatives shall be in an advisory capacity only and the manager is not to assume any direction or control over representatives which will change or appear to change their status as independent contractors.

While the nature of the relationship purporting to be created by the agreements described above is sufficiently plain, we must nevertheless, in accordance with *Matter of Morton (supra)*, look to the actual practices of the parties. Upon this aspect of the case a great deal of evidence has been taken.

In weighing this evidence one basic consideration is the sales methods used by respondent in marketing its product. Respondent does not rely upon national advertising in order to create a market, nor depend upon the ordinary retail outlets to distribute its product. It depends entirely upon the canvassing conducted by its representatives, both to publicize and to sell the vacuum cleaners it manufactures. Consequently it is a little difficult to believe the protestations of respondent that it has not the slightest interest, or wish to interfere, in the selling activities of its representatives. With this consideration in mind we proceed to an examination of the evidence in these cases solely to see if there is sufficient contained therein to support the findings of the Appeal Board, including the finding that respondent's practices are not in accord with the terms of its sales representatives' agreements.

Each neophyte salesman is given about one or two days' instruction in the construction and operation of respondent's vacuum cleaner. The salesman, if accepted, is then assigned to a particular group of sales representatives who are under the jurisdiction of a group leader or team captain. The latter has a monetary interest in the success of the sales representatives assigned to him because

he receives an overriding commission upon each sale made by these men. Team captains, group leaders and the sales managers at branch offices attempt to attain a 100 per cent attendance at meetings conducted every morning at which the salesmen are indoctrinated with the selling method approved by the company. Attendance is often checked at these meetings and if a particular salesman fails to attend, the group leader may write or telephone him to inquire the reason for his absence. Moreover, so-called " clinics " are held at regular intervals which are designed further to standardize the representatives' selling methods into the approved pattern. Respondent is quite successful in securing a large attendance at both the morning meetings and the " clinics."

Each salesman is assigned to a particular territory and furnished with a complete vacuum cleaner with which to make his demonstrations to prospective customers. While no quota is set up, there are public awards for proficiency. These prize contests are a device developed by respondent not only to promote competition among the men but also to enlist the sympathy of prospective customers so as to expedite sales. Moreover, respondent issues a good deal of literature to its representatives in which it instructs them in its approved selling methods. An example is the so-called " Dig More Dirt " demonstration. In this pamphlet the salesman is instructed with the minutest detail in the method he is to use in approaching a prospective customer. Each step in the demonstration is set forth both in writing and pictorially. Each movement the salesman is to make and the precise words he is to say, right down to the moment when he is to ask for a glass of water, are set out for him, and he is reminded that a successful salesman follows the suggested methods meticulously. According to statements taken from respondent's own literature, the great majority of its salesmen do accept the so-called suggestions and carry them out literally.

More than the mere selling approach of its salesmen is controlled by respondent company. It is prescribed that, when an order is obtained, the salesman must secure a signed contract upon a form furnished by the company. The sale must be either for cash or upon monthly installments not to exceed one year. All sales upon credit are subject to the approval of respondent, and the salesman

must obtain from the customer references which are turned into the branch office. All sales are checked by a so-called " verifier " who visits the customer in order to ascertain that the sale is bona-fide. Trade-in allowances for old vacuum cleaners are allowed in accordance with a schedule drawn up by the company.

The salesmen are paid once a week, and are required to file weekly settlement records upon which their commissions are computed. Thus respondent company is enabled to keep a pretty close check upon their success or failure.

Again, more than mere moral suasion is employed to regiment the activities of these sales representatives. Lack of success has its penalties. The sample vacuum cleaner may be taken away from a man after two weeks of non-success. His contract with respondent is terminable without cause upon thirty-days' notice.

In addition, we have the testimony of witnesses from respondent's own personnel who stated that they could see no difference in the nature of their duties before July 1, 1938, when they were concededly employees, and afterwards. A team captain testified that the making of the new contract did not in any way change the relationship between respondent and its team captains.

We thus have a case where " on the one side there is an intimacy of control and on the other a fullness of submission that imports the presence of a ' sovereign ' * * *." (*Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60, 63). There, in dealing with a similar problem we said: " If he [the salesman] fails to work it [the route] diligently, he knows that there will be an end of his employment as surely as if he were working for a stated wage."

Consequently we cannot escape the conclusion that there was substantial legal evidence to support the finding of the Appeal Board in the five cases at bar, that respondent's sales representatives are in fact employees. From the foregoing facts, especially the right to terminate the contract upon short notice, it may be inferred that respondent has erected a system of moral sanctions and indirect compulsion which effectively regiment the activities of its representatives into a pattern desired by respondent of minute and detailed control. Under these circumstances, the expressed desires of the employer, though couched in terms of suggestion, are quite as effective as outright commands. It cannot be said upon this

evidence that the Appeal Board did not, as a matter of law, correctly interpret the evidence before it.

It follows that the order of the Appellate Division should be reversed and the decision of the Unemployment Insurance Appeal Board confirmed, without costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.