In the Matter of RUMSEY MANUFACTURING CORPORATION, Respondent.

EDWARD CORSI, as Industrial Commissioner of the State of New York, Appellant.

Argued October 11, 1946; decided January 16, 1947.

*Nathaniel L. Goldstein, Attorney-General (Francis R. Curran, Wendell P. Brown* and *Otto W. G. Marquard* of counsel), for appellant. I. It was error for the Appellate Division to reverse the appeal board's decision on the law, since there was sufficient evidence to sustain the board's finding of fact that respondent's failure to file the reports on time was not attributable to circumstances beyond its control. (Labor Law, § 575; *Matter of Electrolux Corporation,* 288 N. Y. 440; *Matter of Carroll [N. Y. Military Academy],* 288 N. Y. 447; *Matter of Daus* v. *Gunderman & Sons, Inc.,* 283 N. Y. 459; *Pioneer Automobile Service Co.* v. *Commissioner of Internal Revenue,* 36 B. T. A. 213; *Merritt* v. *Earle,* 29 N. Y. 115; *People ex rel. Hirschberg* v. *Seeger,* 100 Misc. 51, 179 App. Div. 792; *Matter of Kelleher.*

283 N. Y. 664.) II. The Court of Appeals should not consider the constitutional question sought to be reviewed by respondent. The order appealed from should be reversed, and the decision of the appeal board reinstated. (*Matter of Helfrick* v. *Dahlstrom Metallic Door Co.*, 256 N. Y. 199, 284 U. S. 594; *Nod-Away Co.* v. *Carroll*, 240 N. Y. 252; *Matter of Andersen*, 178 N. Y. 416; *Paul* v. *Delaware, Lackawanna & Western Railroad Co.*, 175 N. Y. 478; *Dodge* v. *Cornelius*, 168 N. Y. 242; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42.)

*Albert Auerbach* for respondent. I. The Appellate Division found that the evidence was insufficient as a matter of law to sustain the board's findings of fact and it was therefore not error to reverse the board's decision, on the law. (*Matter of Gnerich*, 41 N. Y. S. 2d 292; *Matter of Electrolux Corp.*, 288 N. Y. 440; *Matter of Morton*, 284 N. Y. 167; *Matter of Sullivan Co., Inc.*, 289 N. Y. 110.) II. Section 575, subdivision 2, of the Labor Law is unconstitutional, as it violates article I, section 6, of the State Constitution and Amendments V and XIV of the United States Constitution, for the reason that said section is so arbitrary and unreasonable on its face as to show that it deprives an employer of his property without " due process of law " and denies him the equal protection of the laws. (*Chamberlin, Inc.*, v. *Andrews*, 271 N. Y. 1.) III. Section 623 of the Labor Law is unconstitutional, as it violates article I, section 6, of the State Constitution and Amendments V and XIV of the United States Constitution and article I, section 1, of the Bill of Rights, for the reason that said section is so arbitrary and unreasonable on its face as to show that it deprives an employer of his property without " due process of law " and denies him the equal protection of the laws. IV. The decision of the board being arbitrary, the Court of Appeals is empowered to determine the questions of fact so as to prevent the violation of the " due process clauses " of the New York State and Federal Constitutions. (*People ex rel. Consol. Water Co.* v. *Maltbie*, 275 N. Y. 357.)

DESMOND, J. Section 575 of the Labor Law requires every employer who is within the coverage of the unemployment insurance statutes (Labor Law, art. 18), to keep accurate payroll records. Regulations made by the State Industrial Commis-

sioner, pursuant to statute, prescribe that quarterly statements of such payrolls be filed with the commissioner not later than the last day of the month following the close of each quarter-year. Respondent, a covered employer, failed to file such a report for the second quarter of 1944 on or before July 31, 1944, the critical date under the regulations aforesaid, and failed also to file the third quarter report on or before its due date: October 31, 1944. Section 575 of the Labor Law, above mentioned, says, in its second subdivision, that any employer who, having failed to file a wage statement as required by the regulations, fails thereafter to comply with the commissioner's demand for such filing, within twenty days after the delivery of such demand, " shall pay " a penalty computed according to a stated formula, but not exceeding certain maxima. After respondent had failed, in the two instances above cited, to file its statements in time, the commissioner, in each instance, mailed respondent the statutory twenty-day notice. Respondent, however, did not file either of those past-due quarterly reports within those further twenty-day periods. The commissioner thereupon imposed on respondent, for each such default, the maximum penalty of $500. Respondent, as permitted by section 620, subdivision 2, of the Labor Law, applied to the commissioner for a hearing on the matter. The hearing was held before a departmental referee. All the testimony of importance was given by one of respondent's officers. He told of the extreme difficulty experienced by respondent, during the war years, in assembling a sufficient force of employees. The witness pointed out that respondent, a manufacturer, had, before the war, done a business of only about $70,000 a year and then had only twenty-five employees, three or four of whom did all its office work. Beginning in 1942, however, war orders increased respondent's annual volume of business to about $7,000,000 or $8,000,000, and resulted in an increase to about six hundred or seven hundred employees, of whom forty or fifty did office work. An adequate supply of trained office workers, he testified, was not available in respondent's village, so the office work, including the preparation of these payroll records, fell behind. This testimony was not directly disputed but it was, of course, self-serving and it did not point, unerringly and of necessity, to only one possible factual conclusion. The referee

regarded it as a sufficient excuse for the admittedly tardy filings and overruled the commissioner's direction that the penalties were to be paid.

The Industrial Commissioner, dissatisfied with the referee's decision, appealed therefrom, under subdivision 3 of section 621 of the Labor Law, to the Unemployment Insurance Appeal Board, which consists of three members appointed by the Governor (Labor Law, § 534). The Appeal Board, after a hearing, reversed the referee and sustained the commissioner, holding that respondent had failed to prove that its delays were " attributable to circumstances beyond its control sufficient to entitle it to be excused as a matter of law."

Respondent-employer then appealed to the Appellate Division, as permitted by section 624 of the Labor Law. The Appellate Division, calling the Appeal Board's decision " arbitrary ", reversed that decision and annulled the penalties. We hold that the Appellate Division exceeded its power in so doing.

The pertinent statute (Labor Law, § 623) says that " a decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law." Respondent failed to file its reports on time and was fined therefor by the commissioner. Contending that it had a sufficient excuse for its delays, respondent applied for, and got, a hearing at which it presented its excuse. It showed that war-time conditions made it difficult for it to recruit an adequate force of efficient office workers. Persuasive and impressive as that testimony was, it did not show, conclusively and beyond doubt, that filing of the reports within the time allowed was actually impossible. From the end of the second quarter of 1944 to the end of the time allowed by the regulations and by the subsequent demand, was sixty-five days. As to the third quarter report, the total time available was sixty-seven days. During those periods respondent's office staff, short-handed and inexperienced though it was, was working at something. This is not a case of an individual owner, with no helpers at all and himself incapable through sickness, of preparing the reports (see Opinions of Attorney-General for 1943, p. 313). It may have been most inconvenient or troublesome for respondent to file these papers on time. It was not shown, as matter of law, to have been impossible. Impossibility was a permissible, but

surely not a necessary, inference from the testimony. " Only where the circumstances admit of only one inference may the court decide as a matter of law what inference shall be drawn " (*Camardo* v. *New York State Railways*, 247 N. Y. 111, 118; see *Matter of Trowbridge*, 266 N. Y. 283, 293). The Appeal Board's refusal to accept respondent's explanation as a sufficient excuse was a ruling on a question of fact (*Matter of Albano* v. *Hammond*, 268 N. Y. 104, 108) and, not being without support in the record, was " final " (Labor Law, § 623, *supra*; see *Matter of Electrolux Corporation*, 288 N. Y. 440; *Matter of Carroll* [*N. Y. Military Academy*], 288 N. Y. 447, 451; *Matter of Morton*, 284 N. Y. 167, 170).

We readily assent to the statements quoted by Judge THACHER from leading cases, of the duty of the courts to set at naught arbitrary and unfounded administrative holdings. But we see nothing " arbitrary " in this Appeal Board's refusal to accept respondent's *ipse dixit* that it was " impossible " for it to prepare and file so simple a report in sixty-five (or sixty-seven) days. The report merely copied the same payroll data already set up by respondent for its own use in paying its employees.

It is unnecessary to enlarge upon the importance of the prompt filing of these reports. They are basic in the administration of the law. It is the commissioner's responsibility to get the reports filed, and it is not for the courts to instruct or control his judgment in such administrative matters. Analogous hereto are the cases where we have held that, where a civil service employee is tried on a charge the truth of which is admitted, the sufficiency of an explanation or excuse is a question of fact for the removing officer (see *People ex rel. Regan* v. *Enright*, 240 N. Y. 194, 198; *Matter of Albano* v. *Hammond, supra; Matter of Kelly* v. *Morgan*, 245 App. Div. 59, affd. 272 N. Y. 666).

We see no substance to respondent's contention that section 623 of the Labor Law is unconstitutional insofar as it denies to the courts any power to reverse the Appeal Board's determinations on questions of fact (see *Matter of Helfrick* v. *Dahlstrom M. D. Co.*, 256 N. Y. 199, affd. 284 U. S. 594).

The order of the Appellate Division should be reversed and the determination of the Unemployment Insurance Appeal Board confirmed, with costs in this court and in the Appellate Division.

THACHER, J. (dissenting). When the Department of Labor imposed a penalty upon the respondent for having failed to file its payroll reports for the third quarter of 1944, it had already received these reports, only four days after the expiration of the twenty-day period. This penalty was imposed in the belief that impossibility of filing within the twenty-day period because of circumstances beyond the employer's control could not excuse the four days' delay. This belief was expressed in a letter written to the employer in response to a request for reconsideration of the penalty assessment because the delay was not willful and was quite unavoidable because of conditions beyond the employer's control. Although the request for such reconsideration was made on October 30, 1944, the department's reply was not received until December 28, 1944, when, referring to the statute, the department stated: " This section provides that if an employer does not comply with our demands to submit payroll information within the time specified [that is, the twenty day period], a penalty shall be imposed. The amount of this penalty, which cannot exceed $500.00, is computed at the rate of $3.00 per employee and for each quarter not reported as required. Your reports were not received until September 7, 1944, which was beyond the twenty day period [four days beyond].

" Accordingly, we had no alternative but to assess this penalty which is mandatory in nature and cannot be waived. This penalty is assessed irrespective of intent and even though there may have been no delinquency in the payment of contributions."

That this interpretation of the statute prevailed in the mind of the department when the second penalty was assessed on December 15, 1944, is obvious from the letter written on December 28, 1944.

In accordance with the statutory right the employer requested a hearing pursuant to the provisions of section 575 and subdivision 2 of section 620. The concluding paragraph of section 575 provides: " Such penalty shall be assessed, collected, and paid in the same manner as if it were a deficiency, in accordance with the provisions of this title." and subdivision 2 of section 620 provides that: " Any employer who claims to be aggrieved by the industrial commissioner's determination of the amount of his contributions or by any other rule or order of the commis-

sioner under any provision of this article may apply to the commissioner for a hearing within twenty days after mailing or personal delivery of notice of such determination, rule, or order.''

Accordingly, upon the employer's request, a hearing was held before a referee, who overruled the determinations made on September 8, 1944, and December 15, 1944, imposing penalties, upon the ground that it was not the intention of the Legislature to impose a penalty against an employer for failure to do the impossible. The Industrial Commissioner thereupon appealed to the Unemployment Insurance Appeal Board which made the following findings of fact:

'' The employer is a manufacturing corporation in Seneca Falls, New York. The corporation was delinquent in filing quarterly payroll reports for the second and third quarters of 1944. On August 14, 1944 and November 16, 1944 the Industrial Commissioner made formal demands upon the employer to file quarterly payroll reports for the second and third quarters of 1944, respectively, within twenty days of the dates of the mailing of such demands. The quarterly payroll reports for the second and third quarters of 1944 were received by the Division on September 7, 1944 and December 14, 1944, respectively.  *  *  *

'' Prior to 1942 the employer had a staff of about twenty-five employees. From 1942 to 1944 the corporation obtained large government war contracts. During the latter period its personnel increased to approximately seven hundred employees and its volume of business expanded to almost $8,000,000 a year.

'' Seneca Falls has a population of about seven thousand persons. The employer attributes its failure to submit timely quarterly reports to its inability to recruit sufficient trained personnel from the immediate locality to assist with the office work.''

In its opinion the Unemployment Insurance Appeal Board stated: '' The referee ruled that the corporation's inability to obtain employees to prepare the required reports was a valid excuse for the employer's failure to comply with the Commissioner's demands. We are unable to agree with the referee's conclusion.'' After discussing the language of the statute, the board concluded: '' The record fails to show that the employer's delay in complying with the demands of the Commissioner was

attributable to circumstances beyond its control sufficient to entitle it to be excused as a matter of law. We are constrained to hold that the determinations imposing penalties against the employer should be sustained."

It should be noted that neither the referee nor the board construed the statute as an absolute mandate although it will be seen that the effect of the board's decision was to treat it as such. The Appellate Division recited the facts, established by undisputed testimony, as follows:

" Appellant produced proof to show that it was impossible to comply with the provisions of the statute and the requirements of the notices within the time specified. It was then engaged in the manufacture of war supplies which had a high priority rating and its business had expanded from a volume of $70,000.00 prior to the war to $7,000,000.00 or $8,000,000.00 during the war. The number of its employees increased from 25 in 1942 to 600 or 700 in 1944. It was located at Seneca Falls, New York, a comparatively small community, and had great difficulty in procuring a skilled personnel and skilled office workers, and on account of this was compelled to use inexperienced help, in some instances high school children. At times the office work of appellant fell three or four months behind. The foregoing matters were undisputed. Moreover, it is a matter of common knowledge that industrial concerns of the character of appellant, which had large war contracts to fulfill, operated under great difficulties during the war years. And these difficulties were enhanced by the burden of reports required by various administrative agencies of both the Federal and State Governments." (270 App. Div. 973, 974.)

Characterizing the decision of the board as arbitrary, the Appellate Division held that the Legislature did not intend to penalize employers under the extraordinary circumstances revealed by the record in this case.

The hearing before the board was predicated solely upon the evidence taken before the referee, which established without contradiction that the employer was four days late in filing its payroll reports for the second quarter, and eight days late in filing its reports for the third quarter, for the year 1944. The impossibility of filing them within the twenty-day period in either case was established without contradiction by an officer

of the employer who testified as to the extraordinary conditions existing in this small plant located in Seneca Falls suddenly converted into a war plant operating upon a cost plus basis, requiring innumerable reports to the Government and many Government audits, with an entirely inadequate personnel to carry on this business. Not a word was said in contradiction of this testimony, nor was any evidence adduced to show that the necessary personnel, shown to be unavailable to the employer, could have been supplied from any source. A responsible officer of the employer testified that it was humanly impossible to file the reports within the twenty-day periods.

Upon this state of the record it seems to be entirely clear that the determination of the board was not supported by substantial evidence and that its ruling was arbitrary and capricious. The board in terms held, contrary to the only evidence in the record, that the record failed to show that the employer's delay was attributable to circumstances beyond its control. True it is that it added the words '' sufficient to entitle it to be excused as a matter of law.'' The latter phrase suggests that the board did not intend to rule on the facts at all but only that the facts established were insufficient as matter of law. All the evidence was that the delay was attributable to circumstances beyond the employer's control. That fact was established without contradiction and could not be rejected by the board (*Hull* v. *Littauer*, 162 N. Y. 569, 572; *Chesapeake & Ohio Ry.* v. *Martin*, 283 U. S. 209, 214, 217).

Reasoning by analogy, it is said that, where civil service employees are tried on charges established by proof, the sufficiency of an explanation or excuse presents only a question of fact. We have, however, expressly limited that rule to cases where the removing officer is not shown '' to have acted in bad faith nor frivolously and the facts are not so strong as to impose an obligation on an honest and intelligent official to be convinced of the truth of the explanation ''. (*Matter of Albano* v. *Hammond*, 268 N. Y. 104, 107; *Matter of McMenamy* v. *Aitken*, 290 N. Y. 548.) Applying that rule to this case, the truth of the explanation was established by all of the evidence, which was undisputed, and the Appellate Division was entirely justified in characterizing the decision of the board as not only unsupported by the evidence but, since it was in contradiction of all

the evidence, as arbitrary. " A finding without evidence is arbitrary and baseless." (*Interstate Commerce Comm.* v. *Louisville & Nashville R. R.*, 227 U. S. 88, 91.)

Rules applicable to the review of determinations by administrative tribunals in the exercise of quasi-judicial powers are established by the decisions of the Supreme Court of the United States, which have been followed in this court. These decisions have established the duty of the courts to determine whether the judicial determinations of such tribunals are supported by substantial evidence, are predicated upon findings supported by such evidence or only by arbitrary or capricious considerations and whether the parties concerned have been afforded a fair hearing, with observance of all the pertinent demands of due process.

The progenitor from which these decisions descend is *Interstate Commerce Comm.* v. *Illinois Central R. R.* (215 U. S. 452), where there was an order of the Interstate Commerce Commission under judicial review and it was said (p. 470) : " Beyond controversy, in determining whether an order of the commission shall be suspended or set aside, we must consider, *a,* all relative questions of constitutional power or right; *b,* all pertinent questions as to whether the administrative order is within the scope of the delegated authority under which it purports to have been made; and, *c,* a proposition which we state independently, although in its essence it may be contained in the previous one, viz., whether, even although the order be in form within the delegated power, nevertheless it must be treated as not embraced therein, because the exertion of authority which is questioned has been manifested in such an unreasonable manner as to cause it, in truth, to be within the elementary rule that the substance and not the shadow, determines the validity of the exercise of the power."

Following this decision of the Supreme Court of the United States, the Supreme Court of Minnesota, in *State* v. *Great Northern Ry. Co.* (130 Minn. 57) said of a similar order (p. 61) : " The order may be vacated as unreasonable if it is contrary to some provision of the Federal or state constitution or laws, or if it is beyond the power granted to the commission, or if it is based on some mistake of law, or if there is no evidence to support it, or if, having regard to the interest of both the public

and the carrier, it is so arbitrary as to be beyond the exercise of reasonable discretion.''

These two decisions were adopted as the law of this State in *People ex rel. New York & Queens Gas Co.* v. *McCall* (219 N. Y. 84) and in the opinion of the court, by Judge CUDDEBACK, it was held that subdivision 5 of section 2140 of the Code of Civil Procedure was not intended to extend the power of the court beyond the rules laid down in these two cases. From this ruling has developed the substantial evidence rule (*Matter of Stork Restaurant, Inc.*, v. *Boland*, 282 N. Y. 256, 273; *Matter of Miller* v. *Kling*, 291 N. Y. 65, 68, 69). Our decision in the *New York & Queens Gas Co.* case (*supra*) was affirmed by the Supreme Court (245 U. S. 345). In the course of its opinion the Supreme Court stated that, while in such a case it was confined to the Federal question and had no authority to substitute its judgment for that of the administrative commission as to the wisdom or policy of an order complained of and would not analyze or balance the evidence which was before the commission for the purpose of preponderating whether it was against or for the conclusion arrived at, yet it would '' nevertheless, enter upon such an examination of the record as may be necessary to determine whether the federal constitutional right claimed has been denied, as, in this case, whether there was such a want of hearing or such arbitrary or capricious action on the part of the Commission as to violate the due process clause of the Constitution '' (pp. 348–349.) In this connection it should be remembered that there are many authorities to the effect that the due process clause may be violated by an administrative tribunal which in a proceeding of a quasi-judicial character such as this makes a finding contrary to the '' indisputable character of the evidence '' (*Interstate Commerce Comm.* v. *Louis. & Nash. R. R.*, *supra*, at pp. 91–92, and authorities there cited). The principle was applied in *Lloyd Sabaudo Societa* v. *Elting* (287 U. S. 329) where, in a penalty case, the hearing officer failed to consider evidence before him and relied upon the opinions of experts without putting before them the evidence which might reasonably have affected their expert judgment. It was held that his action was arbitrary and unfair. In that case Justice STONE, writing for a unanimous court, stated (p. 339) : '' The detailed information as to those examinations which petitioner sub-

mitted to the Secretary in this case might reasonably have affected the expert judgment of the physicians at Ellis Island. In relying upon their opinion alone, without putting these additional facts before them, we think the Secretary acted arbitrarily and unfairly.''

Quasi-judicial power must be fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law (*Tang Tun* v. *Edsell*, 223 U. S. 673, 681, 682). The order in this case was not a mere administrative regulation, it was a taking of property, an imposition of a penalty by an administrative board, and the defendant was entitled to show in the court below that the order was so arbitrarily unjust and unreasonable as to amount to a deprivation of property in violation of constitutional right (*Oregon R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510, 524). When fundamental rights are in question the Supreme Court of the United States has repeatedly emphasized '' the difference in security of judicial over administrative action '' (*NG Fung Ho* v. *White*, 259 U. S. 276, 285; *Crowell* v. *Benson*, 285 U. S. 22, 61).

It is held by the Supreme Court of the United States that where confiscation or a deprivation of property is involved the statute may not withhold from the courts power to determine the question according to their own independent judgment when the action of the administrative agency exercising such power comes to be considered on appeal (*Ohio Valley Co.* v. *Ben Avon Borough*, 253 U. S. 287, 289) and Chief Justice HUGHES, writing the opinion of the court in *St. Joseph Stock Yards Co.* v. *U. S.* (298 U. S. 38), said (at p. 52) : '' But to say that their findings of fact [referring to agencies exercising the legislative power of rate making] may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded. It is said we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty. But if this be so, it is not because we are privileged to perform our judicial duty in that case and for reasons

of convenience to disregard it in others. The principle applies when rights either of person or of property are protected by constitutional restrictions. Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority.''

In *Radio Comm.* v. *Nelson Bros. Co.* (289 U. S. 266, 276) Chief Justice HUGHES reiterated these principles and cited many Federal decisions in support thereof, and in *Matter of Motor Haulage Co.* v. *Maltbie* (293 N. Y. 338, 356–357) we quoted his statement with approval, including the authorities cited. The same principles were also recognized by this court in *People ex rel. Consolidated Water Co.* v. *Maltbie* (275 N. Y. 357, appeal dismissed 303 U. S. 158), where Judge LEHMAN, writing for the court, said (at p. 370): `` * * * where the State gives to an administrative body power to determine questions of fact by a judicial inquiry subject to review in the courts, no Federal rights are denied by its order unless ' there was such a want of hearing or such arbitrary or capricious action on the part of the Commission as to violate the due process clause of the Constitution.' ''

In this case we need not determine the right to the independent judgment and determination of a court where the question involved is one of jurisdiction or constitutionality (see *St. Joseph Stock Yards Co.* v. *U. S., supra,* at p. 52). It is enough to conclude, as we are constrained to do, that the board's determination was without substantial evidence to support it, was arbitrary and capricious and resulted in a deprivation of the employer's property without due process of law, in violation of the Constitution of the State and the Constitution of the United States.

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and DYE JJ., concur with DESMOND, J.; THACHER, J., dissents in opinion in which CONWAY and FULD, JJ., concur.

Ordered accordingly. [See 296 N. Y. 857.]