Fboessel, J.
 

 The issue before us is whether there is substantial evidence in the record to support the determination of the Unemployment Insurance Appeal Board (hereinafter called the Board) that union musicians who performed in a night club operated by Basin Street, Inc. (hereinafter called the operator) were
 
 not
 
 employees of the establishment which hired them. The Industrial Commissioner determined they were employees of the operator, and assessed it accordingly for unemployment insurance contributions, based upon the earnings of said musicians, but the Board, relying upon
 
 Matter of Savoy Ballroom Corp (Lubin)
 
 (286 App. Div. 684), eliminated the assessment. Although it participated in the hearing before a referee by its counsel and an accountant, the operator did not appear before the Board, nor did it argue before or file a brief with the Appellate Division or this court.
 

 It is settled law that the identity of the employer must be ascertained on the facts of the individual case, and that no written agreement may preclude an examination into the actual relationship of the parties
 
 (Matter of Morton,
 
 284 N. Y. 167, 175;
 
 Matter of Electrolux Corp.,
 
 288 N. Y. 440, 444). In the instant case, however, neither the Commissioner nor the operator introduced any evidence of the extent to which either the band leader or the operator exercised supervision, direction and control over the musicians. The only evidence in the record is the “Form B ” contract of the American Federation of Musicians, with “ Eider B ” attached.
 

 The contract, in the clearest terms, constituted the operator the employer of all the musicians, including the leader, and gave it “ complete control of the services which the employees will render under the specifications of this contract ” (see
 
 Matter of Hotels Statler Co. [Cor
 
 si], 279 App. Div. 814, motion for leave to appeal denied 304 N. Y. 987;
 
 Matter of Cassetta,
 
 282 App. Div. 793, motion for leave to appeal denied 306 N. Y. 982). In addition, it constituted the band leader the
 
 agent
 
 of the operator for purposes of
 
 distributing
 
 the payroll and replac
 
 *279
 
 ing musicians.
 
 1 ‘
 
 Eider B ’ ’ read, in pertinent part, as follows: “ Notwithstanding any other provisions contained in this contract, it is agreed that the leader shall make the withholdings and pay the taxes and contributions payable by an employer with reference to the employment of the musicians other than himself. In the event that at any time liability for any such payments or withholdings shall be imposed on the purchaser of the music, the leader agrees to transfer any and all tax accounts to the name and credit of the purchaser of the music. It is further agreed that the price stated upon the face of the contract includes an amount equal to 7% over and above the required Union scale, which sum shall be paid to the leader to cover employer’s costs.”
 

 In our opinion, the rider in no way affected the relationship between the parties, as outlined in the main contract. By agreeing that the band leader would make the withholdings and pay the taxes due on the salaries of the musicians, the parties simply continued the agency established in the main contract for the convenience of the principal. The phrase “ Notwithstanding any other provisions contained in this contract ” did not “ override ” anything in the main contract. On the contrary, we read it as an attempt to shift to the band leader the responsibility for paying the taxes “notwithstanding” the fact that the operator, as the true employer, was to have
 
 ‘1
 
 complete control of the services ” of the musicians. Nor can the designation of the operator as “purchaser of the music”, rather than as “employer”, be said to qualify the contractual relationship between the parties.
 

 In short, if the contract as a whole, by virtue of the operative provisions creating rights and imposing duties and obligations, stamps “A” (here the operator) as “employer”, a simple recital that “B ” (here the band leader) is to be responsible for unemployment insurance contributions cannot change the operative facts or alter the legal conclusions that flow therefrom
 
 (Matter of Cassetta, supra).
 

 In
 
 Matter of Savoy Ballroom Corp. (Lubin) (supra)
 
 the
 
 proof
 
 showed that the provision of the main contract reserving complete control to the operator “was only a fiction to begin with, designed to make the purchaser of the music the employer for tax purposes but never really intended to vest
 
 *280
 
 the right of control in him.
 
 The evidence in this record
 
 is overwhelmingly clear that the operator did not in fact have any right to control the manner of performance of the services under the contract.” (286 App. Div. 691; emphasis supplied; see, also,
 
 Bartels
 
 v.
 
 Birmingham,
 
 332 U. S. 126, 128.) As noted, there is no evidence in the record before us as to the actual practices of the parties and who, in fact, exercised supervision over the musicians. In the absence of evidence so indicating, we cannot assume that the contractual provision vesting complete control in the operator, as employer, was a fiction.
 

 Since the only evidence in the record unequivocally stamps the operator as the employer of all the musicians, there is no evidence to support the Board’s finding to the contrary.
 
 “
 
 Eider B ”, as noted, merely constituted the leader the agent of the employer for tax payment purposes. The fact that the operator, pursuant to the 7%-above-contract-price provision, may have turned over the money to its agent cannot immunize it from liability to the State. It simply paid the wrong party and assumed the risk of its agent’s negligence or malfeasance. Parties are not free to agree as to who should be liable for the taxes where there is an employer-employee relationship and the law imposes the obligation on the employer.
 

 The order appealed from should be reversed and the determination of the Industrial Commissioner imposing liability for unemployment contributions on respondent reinstated and confirmed, without costs.
 

 Chief Judge Conway and Judges Desmond, Dye, Ftjld and Bubke concur with Judge Fboessel ; Judge Van" Voobhis dissents and votes to affirm.
 

 Order reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings in accordance with the opinion herein.