■ In the Matter of the Claims of HERBERT CARMACK, JR., et al., Appellants. MARTIN P. CATHERWOOD, as Industrial Commissioner, et al., Respondents.— Claimants appeal from a decision of the Unemployment Insurance Appeal Board suspending their unemployment insurance benefit rights. General Motors Corporation owned and through its Fisher Body and Chevrolet Motor divisions operated an automotive assembly facility located at Tarrytown, New York, for the production of Chevrolet cars and trucks. The plant situated on fenced premises having a single entrance and serviced by a common power plant, water supply and parking lot consisted of two adjacent buildings connected by an enclosed tunnel 60 feet in length which carried a continuous, synchronized conveyor-belt assembly line extending through both buildings. The process of assemblying a passenger vehicle began in the Fisher building where its body was progressively developed into a composite whole as the production line traversed the length of the structure. Before this part of the car reached the entrance to the tunnel a Chevrolet employee working in the Fisher building removed therefrom an attached customer's order and by teletype communicated its specifications to stations located along the line in the Chevrolet building. The assembled body then passed through the conveyor tunnel into the Chevrolet building where upon emergence the instrument panel, heater, clock and wiring were installed. Next, a chassis was joined with the body. At subsequent stations fenders, tires and other necessary constituent parts were added. As the car approached the end of the assembly line about 30 employees of the Fisher Body division (15 on each of two shifts) regularly assigned to the Chevrolet building checked the body for defects such as dents and paint blemishes which they had the duty to correct before its final surrender to the Chevrolet division for delivery to the customer. A Fisher division foreman supervised their work; they punched the same time clock used by Chevrolet employees. The speed of the assembly line was controlled to produce 37 cars per hour. The Tarrytown divisions were not separate legal entities. They operated under a production schedule established by the corporation's central office in Detroit, Michigan. Each maintained a separate payroll department and employed its own personnel and labor relations director, plant manager and production superintendent. The employees of each division were members of Local 664, UAW, an affiliate of the International Union of United Automobile Workers, which was their certified bargaining representative. The local union's structure comprised four component units each of which was permitted to negotiate a separate employment contract with the management of the corresponding division of the employer subject to the approval of the International Union. Each unit elected its own shop, grievance and negotiating committees; disputes arising between a division and its employees were referred to the particular bargaining unit concerned. In March, 1961 a labor-management dispute as to production standards arose in the Fisher Body division concerning which the International Union by letter dated March 22, 1961 formally advised General Motors Corporation in accordance with their agreement that it intended to "authorize strike action on pending issues at Fisher Body — Tarrytown New York." On March 28, 1961 all employees of Fisher Body division including those working in the Chevrolet building struck and established picket lines at the plant. The

strike caused a shutdown of the entire assembly line and halted the production of passenger cars with a resultant layoff of numerous workmen employed in the Chevrolet division including claimants. Others engaged in building trucks for the same division — a process not entailing the use of the assembly line — continued in employment throughout the period of the strike by agreement with the union. The board in affirming the decision of the unemployment insurance referee found that at least one of the causes underlying the claimants' loss of employment was the industrial controversy involving the employees of the Fisher Body division and that the participation in the strike by those stationed in the Chevrolet building extended the dispute to the establishment where claimants were employed and held that the two elements necessary to invoke the suspension provisions of the statute (Unemployment Insurance Law [Labor Law, art. 18], § 592, subd. 1) had been established. It is our judgment that questions of fact within the competence of the board to determine were presented as to causal relationship and the existence of a strike or other industrial controversy in the establishment in which claimants were employed. Its findings have support in the record and are thus final. (Unemployment Insurance Law [Labor Law, art. 18], § 623; *Matter of Morton,* 284 N. Y. 167, 170; *Matter of Electrolux Corp.,* 288 N. Y. 440; *Matter of Rumsey Mfg. Corp. [Corsi],* 296 N. Y. 113, 118, mot. for rearg. den. 296 N. Y. 857.) Decision of the Unemployment Insurance Appeal Board unanimously affirmed, without costs. Present — Bergan, P. J., Coon, Gibson, Herlihy and Taylor, JJ.