Jones, J.
(dissenting). I cannot concur in the determination *987 reached by the majority that there is in this record substantial evidence to support the determination by the Unemployment Insurance Board that the musicians, payment to whom served as the basis for the disputed assessments, were employees of appellants. Recognizing, as I do, that an appellate court may upset a determination by the appeal board only if it may be said, as a matter of law, that a contrary determination is required by the record (Matter of Sierant [Catherwood— Gen. Mills], 24 NY2d 675', 679), examination of the record here convinces me that this is just such a case.
The evidence adduced at the hearing before the unemployment insurance referee, on which the board’s decision must be predicated, admits of only one conclusion — that no employment relationship existed between the establishments on which assessments have been imposed by the Industrial Commissioner and the individual musicians in question.
It is not disputed that the finding of an employer-employee relationship between appellants and the union musicians engaged by them under the American Federation of Musicians’ Form B contract was based solely on the provision in the contract that purports to vest in the owner of the facility "complete supervision, direction and control” over the services of the musicians so engaged. The uncontradicted proof however — from owners, musicians and a musicians’ booking agent alike — was that the right of such supervision was not in fact retained by the owners. On the contrary the testimony was that they exercised no control whatsoever over the details of the musicians’ performances, did not select the music to be performed, did not prescribe the dress of the performers, did not provide musical instruments, did not define the number or length of time-outs taken during a performance, did not determine or even know who the individual members of a musical group would be and likewise did not even determine the number of musicians who would be present at a performance. Additionally, no income taxes were withheld by the owners from moneys paid to the groups who performed under Form B contracts, no W-2 forms were issued, no worker’s compensation coverage was provided and no Social Security taxes were collected with respect to the musicians. In short, none of the indicia or characteristics of an employer-employee relationship existed.
Not only was the evidence uncontroverted that the owners did not in fact exercise or retain any form or control over *988 union musicians who played on their premises under the union contracts; there was more. It is the additional proof in this case which in my analysis is determinative, for I recognize that a finding of employer-employee relationship may properly be predicated on a reserved right to control, even though there be no evidence that such right was in fact ever exercised by the "employer”. In this case there was also uncontroverted proof that the contract provision on which the board, and now the majority in our court, latches was a fiction —an intentional fabrication — known by the parties to be wholly false and designed solely for the purpose of artificially creating unemployment insurance coverage. The parties recognized that the substance of their actual relationship would not give the musicians the right to unemployment insurance, and the artificial provision was devised to confer benefits on the musicians to which they would not otherwise be entitled. The proof was overwhelming that while the parties intended to create unemployment insurance coverage, they never intended to confer any right of actual supervision on the owners. The practice of the parties confirmed what was testified to by owners, musicians and booking agent without exception — that none intended, expected or understood by the execution of the Form B contracts that an employer-employee relationship would actually exist, and that the contracts with the fictitious control-in-the-owner provision were used only because the union required that that be done, under penalty of blacklisting any owner who refused to do so.
The conclusion to which I am driven does not depend in any way on acceptance of the owners’ charge that they were in effect bludgeoned into inclusion of the fictional provision. Their charge in that regard — if it has merit — may be resolved in another forum and is not now properly before us. My analysis proceeds on the assumption that the provision in question was voluntarily included, and that the parties sought by such inclusion to confer unemployment insurance benefits on the musicians. Critical to the result I reach is the principle, conceded by counsel for the Industrial Commissioner on oral argument in our court, that parties to an occupational relationship cannot by agreement extend the scope of the Unemployment Insurance Law. It is undisputed that there are no provisions in article 18 of the Labor Law that authorize or contemplate optional coverage on the part of employers, or authorize the extension of benefits to ineligible persons by *989 voluntary contributions of a self-styled "employer”. In effect, however, the parties to this litigation are being permitted to work an amendment of the Unemployment Insurance Law. That previous cases, in which the proof of calculated fabrication has not been similarly overwhelming and uncontradicted, have upheld coverage of musicians in like circumstances surely does not preclude denial of coverage where, as here, the invented fiction is laid starkly bare.
The hearing referee, whose findings and opinion were adopted by the appeal board, made no contrary finding as to actual control; he rejected the assertion that the contractual control provision was a fiction, not on the ground that it was not a fiction or that a true employer-employee relationship existed, but simply because it was desirable from the musicians’ point of view for purpose of protecting unemployment benefits that they be regarded as employees of the establishments at which they played. To the referee’s findings and opinion the appeal board added only its finding that the owners "had the right” to supervise and control the services of the musicians — an articulation which, in the face of the undisputed proof of lack both of actual control and of any intention to create a right of control, is insufficient to sustain the assessments that have been imposed (Matter of Savoy Ballroom Corp. [Lubin], 286 App Div 684). In reaching this conclusion I apply the rule restated in Matter of Basin St. (Lubin) (6 NY2d 276, 278) that "the identity of the employer must be ascertained on the facts of the individual case, and that no written agreement may preclude an examination into the actual relationship of the parties (Matter of Morton, 284 N. Y. 167, 175; Matter of Electrolux Corp., 288 N. Y. 440, 444).” In Basin St. we accepted at face value the control provision of the Form B contract, stressing that "neither the Commissioner nor the operator introduced any evidence of the extent to which either the band leader or the operator exercised supervision, direction and control over the musicians. The only evidence in the record is the 'Form B’ contract of the American Federation of Musicians, with 'Rider B’ attached. * * * As noted, there is no evidence in the record before us as to the actual practices of the parties and who, in fact, exercised supervision over the musicians. In the absence of evidence so indicating, we cannot assume that the contractual provision vesting complete control in the operator, as employer, was a fiction.” (6 NY2d 276, 278, 280.)
*990 In the case now before us the deficiency noted in Basin St. has been supplied with uncontroverted proof that actual control neither rested in nor was exercised by the owners and that the triggering provision of the contract was a calculated fabrication. The only possible conclusion on the record before us is that the contractual provision was a fiction — and a fiction which if given effect will permit private parties by a contract to expand the scope and coverage of the Unemployment Insurance Law beyond that which the Legislature has seen fit to provide.
Chief Judge Cooke and Judges Gabrielli, Wachtler and Fuchsberg concur in memorandum; Judge Jones dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
Order affirmed.