No. 14899

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

KIRBY CO. OF BOZEMAN, INC.,
A Montana corporation,

            Petitioner and Appellant,

        vs.

EMPLOYMENT SECURITY DIVISION
OF THE MONTANA STATE DEPARTMENT
OF LABOR AND INDUSTRY,

            Respondent and Respondent.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Poore, Roth, Robischon and Robinson, Butte, Montana

    For Respondent:

        Robert Campbell, Helena, Montana

---

                        Submitted on briefs: April 3, 1980

                            Decided: July 22, 1980

Filed: JUL 23 1980

_Thomas J. Kearney_
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Kirby Company of Bozeman (herein Kirby) is a Montana corporation with its principal place of business in Bozeman, Montana. Appellant Kirby is associated with Kirby Company, a division of Scott and Fetzer Company, as a direct factory distributor of vacuum cleaners and related products manufactured by Kirby Company. In that capacity, appellant is authorized to purchase Kirby Company products direct from the manufacturer and wholesale them to "area distributors" and "dealers." Kirby is also authorized to retail the products to the general public.

Kirby's facility in Bozeman consists of a small store containing two offices and a repair shop. Ninety-eight percent of Kirby's retail sales are made by door-to-door salespersons referred to as "dealers." The dealers are recruited by Kirby or come to the organization on their own initiative. Salespersons sign a one-year written agreement when they become dealers. The agreement is automatically renewable annually and subject to termination on thirty days' notice. A salesperson must be authorized through a wholesale outlet like Kirby to sell Kirby products.

Kirby president, David Sward, gives product demonstrations to new dealers and provides them with a sales guide booklet. Sward also conducts sales clinics for the dealers, but attendance at the clinics is not mandatory. New dealers sometimes accompany experienced dealers on their initial sales calls. Kirby furnishes leads to the dealers for a $5.00 fee. Kirby does not set the hours of the dealers or impose territorial restrictions upon them. Dealers are not reimbursed for expenses, guaranteed minimum earnings, or

provided with any fringe benefits such as vacation pay or sick leave. The dealers are free to sell competing products, but apparently few do. Kirby encourages dealers to use business cards. The card introduced into evidence in this case included Kirby's name, address and phone number as well as the dealer's name and phone number. Kirby does not provide office space for the dealers. However, it does not appear that any of the dealers maintain separate office space for selling the Kirby products. The dealers apparently work door-to-door or out of their homes.

The dealers buy products from Kirby for cash or on a thirty-day open account. Kirby gives the dealers the suggested retail price for the products. The dealers generally adhere to the set prices, although they are not required to do so. The dealers sell the products to customers for cash or on a conditional sales contract. The dealers negotiate their own terms on the contracts. Kirby is not required to purchase conditional sales contracts negotiated by dealers but does so on occasion. Dealers are not required to collect delinquent accounts on purchased contracts and are paid full commission on sales made even if the products are ultimately repossessed. Dealers also negotiate the kind and value of any trade-ins taken in connection with a sale. Kirby is obligated under the written agreement with the dealers to purchase any vacuums taken as trade-ins. Kirby is not, however, obligated to pay the dealer the same amount the dealer gave the customer for the trade-ins or to purchase items other than vacuums taken in trade.

Kirby requires the dealers to keep records of the sales they make and to provide the customer information necessary for the warranties on the products sold. Kirby warrants the

products sold and performs all service and repair work under the warranty. Dealers also customarily submit all sales receipts to Kirby. Customer checks are sometimes made out to Kirby rather than to the dealer. Kirby does not require this procedure but does so to enable the dealers to keep a more accurate record of their sales. Under this method, Kirby pays the dealers the amount their receipts exceed the wholesale price of merchandise sold every week to ten days.

In February 1977 a tax examiner of the Employment Security Division of the Montana Department of Labor and Industry determined Kirby's dealers were employees within the meaning of Montana unemployment insurance law. Kirby would, therefore, be required to make contributions to the unemployment compensation division on the earnings of the dealers. Kirby appealed the decision to the tax appeals referee of the Employment Security Division who affirmed the decision of the tax examiner. Kirby then appealed the decision to the Board of Labor Appeals. The Board sustained the decision of the referee.

Kirby then filed a petition for judicial review of the Board's decision in District Court, Gallatin County. The District Court, the Honorable W. W. Lessley presiding, held a hearing at which the parties presented arguments on the legal issues involved in the case. Judge Lessley subsequently entered findings of fact and conclusions of law upholding the decision of the Board of Labor Appeals. This appeal followed.

Kirby raises the following issues on appeal:

1. Did the District Court err in entering findings of fact different from the findings of fact made by the Board of Labor Appeals?

2. Did the District Court err in concluding Kirby's dealers are employees within the meaning of Montana's unemployment insurance law?

Section 39-51-2410(5), MCA, sets out the scope of judicial review of decisions of the Board of Labor Appeals. That section reads in pertinent part:

"In any judicial proceedings under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law . . ."

Under the plain meaning of this statute and the case law interpreting it, the District Court must treat the findings of the Board as conclusive, if the findings are supported by the evidence and in the absence of fraud. Noone v. Reeder (1968), 151 Mont. 248, 252, 441 P.2d 309. The District Court should, therefore, limit its review of the findings of the Board to a consideration of whether they are supported by the evidence. The District Court should not enter findings different from the Board's without first determining the Board's findings are not supported by the evidence.

Here, the District Court affirmed the decision of the Board. In doing so, however, the court entered findings of fact different from those adopted by the Board. The District Court did not state that it felt the findings of the Board were not supported by the evidence. In fact, the District Court filed a memorandum in support of the findings and conclusions it reached. In the memorandum, the District Court set out as the only issue on appeal whether there was substantial evidence to support the decision of the Board. Under this standard the court listed evidence from the

-5-

record to support the Board's decision that Kirby exercised sufficient control over the dealers to warrant the finding of an employer-employee relationship between Kirby and the dealers.

Kirby now attacks the procedure employed by the District Court in deciding the case as improper because the court entered findings different from those adopted by the Board. Kirby argues it was error for the lower court to enter the different findings under section 39-51-2406, MCA, unless the court first determined the Board's findings are not supported by the evidence. Kirby asks this Court to reverse the decision of the District Court because of this procedural error.

Under section 39-51-2410, MCA, it is not proper for the District Court to enter findings of fact different from those affirmed by the Board without first determining the findings are not supported by the evidence. Therefore, we agree with Kirby that the District Court erred in doing so here. We do not, however, agree with Kirby's contention that this procedural error requires reversal of the District Court's decision.

This Court will not reverse or remand a decision of the District Court when the eventual result in the District Court must be the same. Green v. Green (1978), 176 Mont. 532, 579 P.2d 1235, 35 St.Rep. 800, 803. Here, reversing and remanding because the District Court entered its own findings without first declaring the Board's findings were not supported by the evidence would undoubtedly result in the District Court once again affirming the Board's decision.

The District Court made it clear that it found the Board's findings were supported by the evidence in the

memorandum the court filed. In the memorandum the District Court stated the only issue it was considering was whether there was substantial evidence in the record to support the decision of the Board. The court then listed evidence from the record supporting the Board's conclusion that Kirby exercised sufficient control over the dealers to warrant the finding of an employer-employee relationship between Kirby and the dealers. If we reversed the case and remanded it to the District Court, the court would simply withdraw its findings of fact and redeclare its decision based on the memorandum filed. Such an action would be a needless exercise on the part of the District Court and would ultimately do no good for Kirby. We will not, therefore, reverse on this issue.

The second issue involves the determination of whether the dealers are employees or independent contractors as a matter of law. We recently discussed the distinction between employees and independent contractors in the context of unemployment insurance contributions in Standard Chem. Mfg. Co. v. Employment Sec. (1980), ____ Mont. ____, 605 P.2d 610, 37 St.Rep. 105. In Standard Chemical we recognized that two tests are used to determine whether an employment or independent contract relationship exists. Standard Chemical, 605 P.2d at 612, 37 St.Rep. at 107. The first test is the statutory "ABC" test, which is set out in section 39-51-203(4), MCA:

"(4) Service performed by an individual for wages is considered to be employment subject to this chapter unless and until it is shown to the satisfaction of the division that:

"(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact;

"(b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) such individual is customarily engaged in an independently established trade, occupation, profession, or business."

The second test is the common-law test. We stated the common-law test in Standard Chemical as follows:

"'"An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually not paid by the job. (And see Neyman v. Pincus, 82 Mont. 467, 267 P. 805.)"

"'. . .

"'The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.'" 605 P.2d at 613, 37 St.Rep. at 108, quoting from Pat Griffin Co. v. Employment Security Comm'n (1974), 163 Mont. 529, 519 P.2d 147.

The scope of our review is limited in applying these tests. Standard Chemical, 605 P.2d at 613, 37 St.Rep. at 108. We will not overturn the decision of the District Court to uphold the decision of the Board unless it can be shown the lower court abused its discretion in doing so. Standard Chemical, 605 P.2d at 613, 37 St.Rep. at 109.

Under this standard, we first consider the amount of control Kirby exercised over the dealers here, as control is the most crucial factor which distinguishes employees from independent contractors. Standard Chemical, 605 P.2d at 613, 37 St.Rep. at 109. Here, as in Standard Chemical, the right of control is a close question. However, a tax examiner,

-8-

a tax appeals referee, the Board of Labor Appeals and the District Court have all reviewed the facts as set out above and reached the conclusion that Kirby exercised sufficient control over the dealers to form an employer-employee relationship for the purposes of the unemployment insurance statutes. Although the question may be close, we agree.

Kirby trained the dealers in the method of marketing Kirby products by giving them initial demonstrations of the products, providing them with a sales guide booklet, and conducting sales clinics. Kirby regulated the price dealers charged for the products by suggesting retail prices which the dealers generally adhered to. Kirby customarily received the dealers' sales receipts and paid the dealers their commissions. Finally, and possibly most importantly, dealers had to be authorized through a wholesale outlet like Kirby to sell Kirby products and Kirby could terminate the contract granting the dealers that authorization without cause on thirty days' notice. Under Standard Chemical, this setup represents the kind of control, although in some aspects indirect, that is sufficient to establish an employer-employee relationship within the meaning of our unemployment insurance statutes. Given these facts, we certainly cannot say the District Court abused its discretion in affirming the decision of the Board of Labor Appeals finding the dealers were employees of Kirby. Therefore, we affirm the decision of the District Court holding the dealers to be employees of Kirby for unemployment insurance purposes.

In so holding, we note that this decision is in accord with the majority of other jurisdictions that have considered the question of whether vacuum cleaner salespersons are employees or independent contractors for unemployment

compensation purposes under similar fact situations. Kirkpatrick v. Peet (1967), 247 Or. 204, 428 P.2d 405; Beaman v. Superior Products, Inc. (1961), 89 Ariz. 119, 358 P.2d 997; Bevan v. California Employment Stabilization Commission (1956), 139 Cal.App.2d 668, 294 P.2d 524; Sudduth v. California Employment Stabilization Commission (1955), 130 Cal.App.2d 304, 278 P.2d 946; Murphy v. Daumit (1944), 387 Ill. 406, 56 N.E.2d 800; In Re Electrolux Corp. (1942), 288 N.Y. 440, 43 N.E.2d 480; Electrolux Corp. v. Board of Review (1942), 129 N.J.L. 154, 28 A.2d 207; cf. Electrolux Corp. v. Danaher (1941), 128 Conn. 342, 23 A.2d 135.

Kirby attempts to distinguish the above cases by pointing out facts in each which vary from the facts here. However, the distinctions Kirby attempts to make are far less significant than the similarities between the cases. We, therefore, adopt the above-cited cases as additional authority for affirming the decision of the District Court on this issue.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-