No. 12530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

PAT GRIFFIN COMPANY,
GASAMAT SERVICE STATIONS,

Plaintiffs and Respondents,

-vs-

EMPLOYMENT SECURITY COMMISSION
OF THE STATE OF MONTANA et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Second Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellants:

Moody Brickett argued, Helena, Montana

For Respondents:

Poore, McKenzie and Roth, Butte, Montana
Urban L. Roth argued, Butte, Montana
Donald C. Robinson argued, Butte, Montana

---

Submitted: November 30, 1973

Decided: JAN 29 1974

Filed: JAN 29 1974

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

The defendant Employment Security Commission (now designated Employment Security Division, Montana State Department of Labor and Industry), made and entered a decision holding that individuals operating Gasamat stations were in fact employees of the plaintiff Pat Griffin Company and that Pat Griffin Company was liable for unemployment tax contributions.

Thereafter this action was filed by plaintiff Pat Griffin Company in the second judicial district and as a result the decision of the Employment Security Commission was reversed. This appeal from the ruling of the district court was taken by the Employment Security Commission. Hereafter plaintiff will be referred to as Gasamat and defendant as the Commission.

From the record it appears that Gasamat has its headquarters in Fort Collins, Colorado, and is in the retail gasoline business, operating self-service gasoline stations, with outlets in Montana at Billings, Great Falls, Helena, Butte, Missoula and Bozeman. The customer at a Gasamat station serves himself through token operated pumps for which the customer obtains tokens or change from the "change window" at the office-residence of the operator. Gasamat owns the service stations, pumps, storage tanks and buildings involved at each location. Each station location consists of two buildings, an office-living quarters and an oil warehouse.

The Gasamat stations are leased by individual operators under a lease agreement. The operator pays $90.00 per month for the property. This amount is deducted from his commission. Ten days notice is required to terminate the lease. The lease agreement also provides that the property cannot be sublet without the permission of Gasamat and " * * * no rights and privileges as herein granted to lessee shall be sold, transferred or assigned

without first obtaining the written consent of lessor. * * *"

Gasamat insures the property, insurance covering both the property itself and public liability. The personal property owned by the operator is insured by the operator.

The operator sells the products under a consignment contract made with Gasamat. Gasamat provides the gasoline to the station. The operator is not required to pay for the gasoline. He derives a commission on sale of gasoline of 3/4 of a cent per gallon on the first 40,000 gallons sold and 1/2 cent thereafter per month. When gasoline is low, the operator calls a number supplied by Gasamat. Gasoline is then delivered by common carrier, and is charged to Gasamat. The operator pays nothing. Title to the gasoline remains in Gasamat. The tax on the gasoline is paid by Gasamat.

Gasamat offers two brands of oil to the operators, but the operators may buy other brands of oil from other oil companies. An oil warehouse is located on the station premises which houses the oil products. If the operator removes any oil from the warehouse which is from Gasamat, he must pay that company for it at that time and include the purchase of that oil in his next report, together with cash money from the purchase. The operator is under no obligation to buy oil products from Gasamat.

The operator is required to make daily deposits at a local bank account in the name of Gasamat. He is required to make reports to Gasamat three times a week. The reports would include such things as the amount of gas that has been delivered to the station, the amount of sales and the amount of supplies on hand.

Gasamat provides and pays for a bond for the operator.

Gasamat pays for radio advertising, but the operator is free to advertise in other ways at his expense. The telephone and electricity are paid for by Gasamat. Heat is paid for by the

operator. Gasamat pays for the major repairs to the property. Minor repairs are made by the operator.

The operator reports his own federal income tax and pays and withholds his own tax. He also pays his own social security and workmen's compensation taxes.

Representatives of Gasamat visit the premises every four or five weeks to assist the operator in any way they can and " * * * to help him sell gasoline and oil." The representatives write reports following visits, which are filed with Gasamat headquarters in Colorado.

The operator can sell other retail products which he chooses to carry, and he is free to miss work (or close) any day he chooses. The operator is free to hire relief personnel.

The question presented for review is whether there is substantial evidence to support the Commission's findings that individuals engaged by Gasamat are employees for the purpose of determining whether Gasamat is liable for the payment of unemployment compensation taxes.

Determinative of the issue presented is section 87-148(j)(5), R.C.M. 1947, which provides:

> "Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:
>
> "(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact; and
>
> "(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> "(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

- 4 -

The term "wages" is defined in section 87-149(c), R.C.M. 1947:

> "'Wages,' means all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash. * * *"

In St. Regis Paper Co. v. U.C.C. of Mont., 157 Mont. 548, 550, 487 P.2d 524, a case involving an operator-driver, this Court in considering section 87-148(j)(5), R.C.M. 1947, said:

> "The above cited so-called 'ABC Test' is the statute to determine whether an employer-employee relationship exists for unemployment tax purposes. The statute provides that all three of the stated conditions must exist, or service performed will be deemed to be employment. The statute must be reasonably applied."

In addition, in our analysis of the question and statute we said in St. Regis at 552:

> " * * * We feel that whether a person performing services is an employer (sic) or an independent contractor is the question before us, and statutes used as guides in making such determination must not be distorted to allow persons who are truly independent in their operation to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship."

The question before us in St. Regis is the question before us here, that is, whether the operators of Gasamats in the performance of services are employees or independent contractors. In St. Regis we concluded that by reason of the written contract between the employer and the operator-driver and the uncontroverted fact that the operator-driver was an independent contractor, the conditions of the "ABC Test" were satisfied.

In their briefs both Gasamat and the Commission have cited numerous authority in support of their respective positions. There has been much discussion and illustration of the facts of each of the cited cases. It is the view of this Court that the facts of the instant case establish the relationship of employer-employee between Gasamat and its operators for purposes of the

Montana Unemployment Compensation Law.

While section 87-148(j)(5), R.C.M. 1947 is used as a guide in the determination of the relationship between an employer and an individual performing services, the well-established test in determining whether an individual is an employee or an independent contractor is also a guide to be used. As we did in St. Regis, we here reiterate this test as expressed in Shope v. City of Billings, 85 Mont. 302, 306, 278 P. 826:

> "'An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as the result of his work, and not as to the means whereby it is accomplished, and is usually paid for the job.' (And see Nayman v. Pincus, 82 Mont. 467, 267 Pac. 805.)
>
> " * * *
>
> "The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant; if not under such control, he is an independent contractor."

The first provision of the "ABC Test" requires that the individual be free from control, "both under his contract and in fact". An operator of Gasamat does not have freedom of control over the means, methods and details of his business when he is required to make three reports weekly and daily bank deposits to Gasamat accounts. Particularly, the operator is not truly independent when he is required to order gasoline from a distributor named by Gasamat and where the total control of the gasoline lies with Gasamat.

Gasamat is in the retail gasoline business and it exercises control over its operators as to the means of the sale of gasoline and as to the results of the operator's work. Therefore, the first provision of the "ABC Test" has not been met.

The order and judgment of the district court is reversed.

_James T. Harrison_
Chief Justice

We concur:

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_

Justices

Mr. Justice Castles dissenting:

I dissent, but no useful purpose would be served by a discussion of whether or not Gasomat "controls" its contract operators to such a degree that they become servants and thus employees. I would hold them to be what they agree to be-- independent contractors.

_Castles_
Justice

- 7 -