Argued December 20, 1974, affirmed January 20, reconsideration
denied February 20, petition for review denied March 11, 1975

# TIMBERLAND SALES, INC., *Petitioner, v.*
# EMPLOYMENT DIVISION, *Respondent.*

530 P2d 880

*Wilson C. Muhlheim,* Eugene, argued the cause for petitioner. With him on the brief were Miller, Moulton & Andrews, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Respondent-Employment Division assessed a deficiency against petitioner-Timberland Sales, Inc., covering payroll tax imposed under ORS ch 657 on the

basis that Tupperware dealers are "employes" of petitioner within the meaning of ORS ch 657. Petitioner neither reported the dealers' profits nor paid a tax thereon. Pursuant to ORS 657.683, petitioner requested a hearing upon the deficiency assessment. The hearings referee affirmed the deficiency assessment imposed. Petitioner seeks judicial review and reversal of the order affirming the deficiency assessment. ORS 657.684.

The relevant portions of the referee's findings of fact are, omitting numerical listings:

"The [petitioner] has been an employer subject to the Oregon Employment Division Law since 1968. It is in business as a distributor in Oregon of Tupperware products. [Petitioner] accomplishes the actual sale and distribution to consumers of its merchandise through the services of persons called 'managers' and 'dealers'. A manager * * * is a dealer who has succeeded in obtaining or 'recruiting' other dealers * * * . Managers receive a percentage from [petitioner] on the sales of the dealers they manage, as well as other payments for 'new dealer training', 'recruiting', for assisting another dealer to advance to manager, etc. [Petitioner] reports the manager services of managers and the payments made for such duties to the Employment Division and pays the employment tax on such payments.

"The amounts here in contention are the 'commissions' or profits a dealer (or manager when acting as a dealer) obtains from her sales at Tupperware parties. * * * Dealers enlist housewives to act as [hostesses] and allow a Tupperware party to be held in [their] home[s]. At [such parties], the dealer entertains those present and demonstrates Tupperware from her 'kit', all for the purpose of selling Tupperware merchandise to the guests. The 'kit' she uses for demonstration is ob-

tained from [petitioner] at a cost of around $35. Payment for the kit may be made in cash, but usually is paid by offsetting the commission or profit made from the first $100 of her sales. Orders for merchandise are taken at the party by the dealer on forms supplied her by [petitioner]. These orders are turned in to [petitioner] at a weekly sales meeting held at [petitioner's] establishment each Monday morning. The order is filled by [petitioner] and picked up by the dealer on the following Thursday, at which time she delivers it to the home of the hostess who has in the interim collected payment from those ordering merchandise. The dealer leaves the merchandise with the hostess, picking up payment * * * and then pays [petitioner] the cost to the dealer (designated a[s] 'wholesale' price), retaining 35 percent which is her profit or commission. Pickups from [petitioner] may be made on other than Thursday, but such [practice] results in [petitioner] charging the dealer a 'rush order' charge. From her profit or commission on sales, the dealer must pay her own expenses, such as auto, hostess gifts, etc. Most dealers did not sell products other than Tupperware though some did sell non-competitive items, such as notions, fabrics, etc. Most dealers have cards or advertising devices (such as a ball point pen) bearing the dealer's name, address and home phone number, with the word 'Tupperware'. Each dealer and manager [works] out of her own home, using her home phone, and using a part [of the home] as an office where she usually has a desk, chair, typewriter and possibly an adding machine or calculator Each submits her own income tax returns and does not receive a W-2 form from [petitioner]. Most, if not all, keep a supply of Tupperware on hand, valued at from $100 to $300 which [is kept] as a convenience. This stock consists of [the] basic 'kit' * * * plus any additions * * *. Excess stock is usually accumulated through the action of guests at Tupperware parties who have

changed their minds after the party, making no payment to the 'hostess'. Such stock may be returned to [petitioner] for credit, [or] may be retained by the dealer or manager. None of the dealers and managers maintained offices or phones separate from their homes. Managers are furnished by [petitioner] each month with statements advising them of the amount of sales made by the dealers [they have] recruited. Occasionally persons interested in hostessing a Tupperware party call [petitioner]. In such cases, [petitioner] refers the person to one of the managers or dealers selling Tupperware * * *. None of the dealers (or managers acting in their capacity as dealers) had any paid assistants or employes. * * * One former manager for [petitioner] * * * was discharged by [petitioner], and she subsequently filed a claim for unemployment benefits with the Employment Division."

Petitioner assigns as error a finding of fact by the referee that *each dealer* "felt free to cease selling [petitioner's] merchandise at will, or that she could be dismissed by [petitioner] at its pleasure." Perhaps the evidence in the record does not support such a broad finding. However, there was evidence which supports a finding that *petitioner* concluded that it could dismiss its dealers at its pleasure. Petitioner, in fact, terminated one person who was both a dealer and a manager because of dissatisfaction with her performance. There was conflicting testimony as to whether or not petitioner terminated that person as a dealer or only as a manager. There was substantial evidence in the record to support a finding that dealers could be dismissed by petitioner at its pleasure. *Von Weidlein/N.W. Bottling v. OLCC,* 16 Or App 81, 101-102, 514 P2d 560, 515 P2d 936, 517 P2d 295 (1973), Sup Ct *review denied* (1974).

■ None of the remaining facts in this case is controverted. Considering the facts as established, whether or not those facts constitute "employment" within the meaning of ORS 657.040 is a question of law. *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965); *Barger v. Morgan,* 13 Or App 111, 507 P2d 821, Sup Ct *review denied* (1973).

■ ■ ORS 657.040 provides that "[s]ervices performed by an individual for remuneration are deemed to be employment subject to this chapter * * *" unless certain circumstances are shown to exist. Petitioner contends that the referee erred in holding that "services" were rendered to petitioner by the dealers. The word "service" should be used in its broad, general sense in the context of this statute. *Journal Pub. Co. v. State U.C. Com.,* 175 Or 627, 636, 155 P2d 570 (1945). The referee found that:

> "* * * * *
>
> "* * * [T]he dealers in this matter (and managers when acting as dealers) performed a service for [petitioner] inasmuch as [petitioner] used their services to reach the market for [the] products it seeks to distribute. For this service, the dealer receives a commission consisting of the difference between the price set by [petitioner] for Tupperware to the dealer and the price charged the customer or consumer of its merchandise. This difference in price is the dealer's remuneration for her services.
>
> "* * * * * *"

The record supports the referee's conclusion that the dealers performed services for remuneration. *See Journal Pub. Co. v. State U.C. Com.,* supra at 636-37, and citations therein.

Petitioner contends that any services rendered by

the dealers are exempt from Employment Division Law coverage because they fulfill the following two exemption requirements of ORS 657.040:

"\* \* \* \* \*

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service \* \* \*

"\* \* \* \* \* \*"

■ The burden is on petitioner to prove that the dealers are not employes. *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967); *Barger v. Morgan,* supra. *See also, Greater Port. Newcomers v. Morgan,* 14 Or App 333, 513 P2d 493 (1973). Additionally, the requirements of ORS 657.040 (1) and (2)(a) are conjunctive rather than disjunctive; thus, if petitioner fails to sustain its burden regarding either factor, the exemption requirements are not met. In the present case, the facts make clear that the dealers are dealing in a particular line of products, produced by a particular company, and received through a particular outlet. Their entire mode of operation appears to relate to the particular line of products they carry. Although some dealers did sell noncompetitive items, such as notions and fabrics, those sales efforts appear to be directly related to, and subsidiary to, the sales of the main product line. In other words, there was no showing that the dealers would have the prospect of supporting themselves in the pursuit of their occupations if the petitioner terminated their dealerships. Petitioner cites several factors which it claims

indicate that the dealers are engaged in an independently established business. These factors include the investment in a sales kit, some sales items, an office in the home and an automobile; goodwill developed with customers; advertising; the economic independence of the dealers; the fact that dealers pay their own taxes; the fact that dealers are paid by commission and must pay their own expenses; the fact that dealers keep their own books; and the fact that dealers assume the risk of nonpayment by customers. All of these factors may tend to support petitioner's argument that the dealers are independently established, but these same factors also tend to support the general proposition that the dealers are sales persons working for petitioner and receiving a commission for their sales. What the petitioner has failed to show, however, is that these dealers would be able to carry on their supposedly "independent" business should their relation with the petitioner be terminated. Absent such a showing, the petitioner has failed to prove the dealers are customarily engaged in "independently established" businesses of the same nature as that involved in their contract of service with petitioner. *See Baker v. Cameron,* supra, 240 Or at 365-66; *Kirkpatrick v. Peet,* supra; *Barger v. Morgan,* supra.

Since petitioner has failed to meet the requirement of ORS 657.040 (2)(a), it is unnecessary to decide whether or not the requirement of subsection (1) of that statute was met.

Petitioner finally contends that in interpretation of ORS 657.040 which finds that the dealers are petitioner's employes would render ORS 657.087 unconstitutional because the latter statute provides an exemption from "employment" for persons performing

services by soliciting contracts for home improvements. The constitutionality of ORS 657.087 is not before us in this case inasmuch as that statute relates to contracts for home improvements. Even petitioner does not contend that Tupperware qualifies as a home improvement within ORS 657.087.

Affirmed.