WILL HART, d/b/a H. Kirby Company, Plaintiff-Appellee, *v.* DONALD A. JOHNSON, Director of Labor, Defendant-Appellant.

First District (3rd Division)    No. 77-1344

Opinion filed February 7, 1979.

William J. Scott, Attorney General, of Chicago (Paul V. Esposito, Assistant Attorney General, of counsel), for appellant.

Martin J. Oberman, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an appeal by the Director of Labor of the State of Illinois (Director) of an order of the Circuit Court of Cook County reversing a decision of the Director which determined that Will Hart d/b/a H. Kirby Company (Hart) was an employer as defined in the Illinois Unemployment Compensation Act (Act) and was liable for contributions and interest pursuant to the Act. Ill. Rev. Stat. 1975, ch. 48, par. 300 *et seq.*

On July 21, 1975, the Director issued to Hart a notice of determination and assessment and demand for payment in the amount of $4366.30 for unpaid contributions plus interest as required by the provisions of the Act. Hart filed a protest and a hearing was held on April 28, 1976, before the Director's representative.

Hart is in the business of distributing vacuum cleaners manufactured by the Kirby Company of Cleveland, Ohio. He maintains an office in Oak Park, Illinois. The vacuum cleaners are sold to the public by various dealers who enter into an independent dealer agreement with Hart. This agreement provides that the relationship between Hart and the dealer is that of vendor and vendee. In addition, it provides that all work and duties to be performed by the dealer shall be performed as an independent contractor. The contract specifically states that the dealer is not an agent or employee of Hart. Hart has never made contributions for unemployment compensation on behalf of any dealer with whom he entered into an independent dealer agreement.

Section 206 of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 316) defines employment as "any service * * * performed by an individual for an employing unit." Hart maintains that the dealers are in business for themselves and do not perform services for him. Hart also urges that if the dealers are found to be performing services under section 206 of the Act, they meet the requirements for an independent contractor set forth in section 212, which states:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with

the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." Ill. Rev. Stat. 1975, ch. 48, par. 322.

The only evidence presented at the hearing was the testimony of Hart and two dealers. Hart explained that he purchases the vacuum cleaners wholesale from the factory in Ohio, and the dealers sell them door-to-door. He obtains the dealers either by referral from other dealers or through newspaper advertisements. Hart provides a three to four-day training program at which he demonstrates to the dealers the manner in which to assemble and operate the machines. The program is not required of dealers who have experience with vacuum cleaners.

When a dealer is prepared to commence selling, he takes a vacuum cleaner and signs a card accepting the merchandise on consignment. When a cash sale is made, the cash or check is delivered to Hart who withholds the sales taxes due to the State. Hart pays the dealer his profit.

Over 90% of the sales are installment purchases. Hart provides the dealers with application forms from various finance companies and has no requirement which form they should use. The buyer completes the credit application and signs an installment sales contract which names the H. Kirby Company as seller. The dealer usually returns the completed documents to Hart who relays the credit information to the finance company. Occasionally, a dealer will contact the finance company directly. Hart testified that the only reason he would reject a contract is if the credit was unacceptable to the finance company. When the finance company has approved the transaction, Hart assigns the contract to the company.

Hart conducts morning sessions in his office at which sales films are presented and dealers engage in general discussions. Although many dealers participate regularly, these meetings are not required. One of Hart's dealers serves as a sales manager and assists in training dealers both in and outside the office. Hart testified that the sales manager does not receive a salary but he receives a higher profit margin.

Hart testified that there is no general supervision of the dealers' work.

He does not specify working hours, assign territories, establish sales quotas or impose a dress code. Dealers are not provided with office space, clerical assistance, business cards, transportation or reimbursement for expenses. Hart does not provide group insurance, a pension plan or any other fringe benefits. In addition, he does not withhold Federal income tax or Social Security payments.

Hart furnishes the dealer with "door hangers" which the dealer will leave on a door when a potential customer is not home. The dealer usually writes his or her name upon the card and if the occupant calls Hart's office in response to the door hanger, someone in the office will relay this information to the dealer. Hart conducts various sales promotions to develop leads for the dealers. There is a charge for leads involving an expense to Hart, but there is no requirement that a dealer accept a lead. Hart also accumulates various promotional gifts which a dealer can purchase to assist in his sales. There are no restrictions on what gifts a dealer can use and several dealers purchase more expensive gifts elsewhere.

If a purchaser calls the office with a service problem, Hart will ask the dealer involved to contact the customer. If the dealer is no longer available, Hart may ask another dealer to handle the complaint although the dealer is free to refuse to handle the call. Hart testified that he has never fired any dealer for refusing to handle another dealer's complaint.

Hart testified that if a machine is lost or stolen the dealer is responsible for its cost. He stated that a dealer is free to carry a competitive product although he has no knowledge that any dealer does. Hart advertises in the telephone directory for "sales*service*parts." Although 90% of the vacuum cleaners are sold through the dealers, Hart occasionally sells to institutional buyers and gives bulk discounts to these accounts.

Two dealers corroborated Hart's description of the operation of his business. Louise Moser testified that she rarely used leads, hired individuals to distribute the door hangers, installed a Call Pak in connection with her telephone solicitation and did not attend the morning meetings. Moser stated that she regarded herself as having her own business operation and did not consider herself Hart's employee. Realizing she was self-employed, Moser established her own annuity program. Reginald Chapman testified that he did not take the training program offered by Hart but daily attended the morning meetings because he found them a good way to start the day. Chapman at one time printed his own advertising material and employed a "phone girl" to assist with his sales.

On June 9, 1976, the Director's representative issued his report recommending that the determination and assessment of the Director of Labor be affirmed. The Director's representative concluded that the

dealers did perform personal services for Hart and that they did not qualify as independent contractors as defined in the Act. On August 13, 1976, the Director affirmed the assessment in the amount of $4,366.30, plus interest. Hart filed his complaint for administrative review in the Circuit Court of Cook County. The court reversed the Director's decision finding that it was contrary to the manifest weight of the evidence and to the law. The Director appeals from that order.

The issues presented for review are:

1. Whether the dealers are employees pursuant to section 206 of the Act.

2. If the dealers are in employment, whether they satisfy the three requirements for independent contractors pursuant to section 212 of the Act.

I

The legislature viewed involuntary unemployment as a serious menace to the people of Illinois. The Unemployment Insurance Act was enacted in response to this severe economic problem. In section 100 of the Act the legislature set forth the public policy of the State as a guide to the interpretation and application of the Act:

"* * * Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family * * *. It is the considered judgment of the General Assembly that in order to lessen the menace to the health, safety and morals of the people of Illinois, and to encourage stabilization of employment, compulsory unemployment insurance upon a statewide scale providing for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment, is necessary." Ill. Rev. Stat. 1975, ch. 48, par. 300.

■■■ The supreme court has noted that statutes of this character enacted in the interest of the public welfare and providing for the assistance of the unemployed are interpreted liberally to achieve their basic purposes. (*American Steel Foundries v. Gordon* (1949), 404 Ill. 174, 88 N.E.2d 465.) The court has liberally construed the Unemployment Insurance Act in order to effectuate the legislature's intention of helping protect workers against the consequences of unemployment. (*Ross v. Cummins* (1956), 7 Ill. 2d 595, 131 N.E.2d 521.) In determining whether an employment relationship exists, the common law concept of master and servant is not controlling; one must examine the somewhat broader statutory definition. (*Spahn v. Department of Labor* (1962), 25 Ill. 2d 482, 185 N.E.2d 231.) In

addition, the title or description by which the parties describe the relationship is not conclusive. *Ross v. Cummins.*

The Director argues that the definition of employment as "any service * * * performed by an individual for an employing unit" is broad enough to include Hart's dealers within its scope. Although there are some facts which are not completely similar, the Director relies on *Murphy v. Daumit* (1944), 387 Ill. 406, 56 N.E.2d 800, in which the supreme court concluded that the Kirby dealers involved in that case were employees pursuant to the Act. The court noted that the dealer had no authority to pass title to the vacuum cleaner to the consumer and characterized the transaction as "not a sale made by the 'dealer' but merely an offer of sale which could be approved or rejected" by the distributor. The dealers, therefore, were performing services for the distributor.

Hart argues that the relationship is that of vendor and vendee and relies upon a 1967 opinion of the Director of Labor involving another Kirby distributor. In that decision (In the Matter of the Protest and Objections to the Determination and Assessment by the Director of Labor v. William H. McClay d/b/a Kirby Co. and Kirby Co. South, Inc., 61-H-97, 61-H-254 and 63-H-382 (May 10, 1967)) the Director concluded that the dealers did not perform services for the distributor, and Hart argues that the cases are nearly identical. In *McClay*, however, all transactions were strictly between the purchaser and the dealer, and the Director emphasized that "merchandise is not given to the dealer on consignment." In the present case, the card signed by Hart's dealers specifically acknowledges that the merchandise is accepted on consignment.

Neither *Murphy* nor *McClay* controls the determination of this case because of the factual differences in the operation of the various distributorships. The Act provides that any determination and assessment made by the Director shall be prima facie correct, and the burden shall be upon the person seeking such review to establish the contrary. (Ill. Rev. Stat. 1975, ch. 48, par. 703.) We must determine, therefore, whether the director's decision was contrary to the manifest weight of the evidence. ■■ We hold that sufficient evidence exists to support the Director's conclusion that the dealers performed services for Hart. We find it significant, as the court did in *Murphy*, that title to the merchandise remained with the distributor. If a cash sale is consummated, the cash or check of the consumer is delivered to Hart. If a check is payable to the dealer, the individual indorses the check to Hart. The installment sales contract is the property of Hart, and it is he who assigns the contract to the finance company. Since the Director's determination, that the dealers were employees, was not against the manifest weight of the evidence, we reverse the decision of the circuit court in this regard.

## II

██ Section 212 provides an exemption from the application of the Act for independent contractors. The common law definition of independent contractor does not govern the administration of this Act (*Parks Cab Co. v. Annunzio* (1952), 412 Ill. 549, 107 N.E.2d 853); the broader statutory definition controls. The three conditions necessary to classify an individual as an independent contractor are conjunctive, and if the individual performs services for an employing unit he is an employee unless the party can prove all three exemption requirements. (*Spahn v. Department of Labor*, at 487.) Hart argues that the dealers fulfill all three criteria.

## A.

██ The first requirement is that the individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact. The existence of general control or of the right to general control, even though details are left to an individual's judgment, is sufficient to negate the exemption provided by section 212. (*Stauffer Reducing, Inc. v. Cummins* (1962), 23 Ill. 2d 567, 179 N.E.2d 652.) We find that there is sufficient evidence to support the Director's conclusion that the dealers were not free from the direction of Hart.

██ The independent dealer agreement executed by Hart and the dealer provides Hart with the power to reject any conditional sales contract negotiated by the dealer. Because the title to the merchandise remains in Hart's name, a dealer has no power to sell a vacuum cleaner on an installment plan without Hart's approval. In addition, the agreement requires the dealer to maintain records on each purchase. Hart also has the power to terminate the contract, and he testified that he would terminate his relationship with any dealer misrepresenting the product. Although Hart may not exercise control over the details of the dealer's work performance, the evidence supports the conclusion that Hart has the right to control the activities of the dealers.

## B.

The second requirement is that the service provided is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed. Hart argues that his business is that of a distributorship while the dealers are in the retail business of selling the vacuum cleaners. The Director contends that Hart's business consists of the sale and distribution of cleaners to the public, and

that the dealers as sales representatives represent Hart in his business enterprise.

We agree with the Director's determination that the services of the dealers are not outside the usual course of Hart's business. Hart's office staff assists the dealers in the sale of the vacuum cleaners. If a dealer leaves a door hanger at an individual's home, the potential customer telephones the office, not the dealer, and a member of the staff relays the information to the dealer. Hart conducts sales promotions and raffles to increase the volume of sales to the public. In addition, Hart advertises in the phone directory that his business is one of "sales*service*parts."

■ We also agree with the Director's opinion that the services of the dealers are not performed outside of Hart's place of business. Dealers can attend morning sales meetings at Hart's office and can obtain leads, door hangers, installment contract forms and credit applications there. More importantly, the dealers use the staff of Hart's office to assist in the performance of their duties by relaying phone messages from the public to the dealers. Hart, therefore, does not satisfy this second requirement of section 212.

## C.

■ We, likewise, agree with the Director's determination that the dealers do not meet the third requirement that they be engaged in an independently established trade, occupation, profession or business. The analysis used by the supreme court in resolving this issue concerning the Kirby dealers in *Murphy v. Daumit* is applicable here:

"* * * it is apparent that the act contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance from any individual whatsoever and whose business also is free from control. Here, the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment * * * Although appellant urges that the individuals were free to carry other lines, it is a fact that there is no evidence that any of the individuals did so." 387 Ill. 406, 417.

Because they do not meet the requirements of section 212, the dealers are not exempt from the provisions of the Unemployment Insurance Act.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby reversed.

Reversed.

SIMON, P. J., and JIGANTI, J., concur.