No. 14917

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STANDARD CHEMICAL MANUFACTURING
COMPANY, a corporation,

                    Plaintiff and Respondent,

        vs.

THE EMPLOYMENT SECURITY DIVISION OF
THE MONTANA STATE DEPARTMENT OF LABOR
AND INDUSTRY; THE BOARD OF LABOR APPEALS
OF THE MONTANA STATE DEPARTMENT OF LABOR
AND INDUSTRY; MICHAEL J. WHALEN, JAMES W.
MURRY, and DOUGLAS R. HANSEN ,as members
of the Board of Labor Appeals,

                    Defendants and Appellants.


Appeal from:   District Court of the First Judicial District,
               Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

        For Appellants:

        Robert J.Campbell, Helena, Montana

        For Respondent:

        Scribner, Huss and Mulroney, Helena, Montana


                        Submitted on briefs: November 7, 1979

                                Decided: JAN 23 1980

Filed:      JAN 2  1980


_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment holding that respondent is exempt from paying unemployment compensation tax on persons it employs as salesmen. The judgment was rendered in the District Court of the First Judicial District, in and for the County of Lewis and Clark, the Honorable Peter G. Meloy presiding.

Respondent is a Nebraska corporation engaged in the manufacturing, distributing and wholesaling of livestock nutritional products. Respondent markets its products in twenty-three states through the use of certain salesman, who are called "contract distributors" or "distributor dealers." The salesmen are recruited by a division manager, who explains the nature of the products as well as respondent's method of distribution, and then enters into contracts for distribution. Once they are recruited, the salesmen purchase a sales kit for $40.00, which is mailed by respondent to either the salesman or his division manager. Accompanying the kit are supply order forms, sales manuals, and other promotional sales items. Most of the salesmen employed by respondent are farmers, ranchers or persons involved in the livestock industry. There are no required hours and the salesmen may work parttime. Salesmen receive no formal training except for occasional assistance in determining a customer's nutritional needs or a problem relating to toxicity.

While the salesmen do not represent themselves as agents of the company, order forms nevertheless reflect the name of the company. The contract for sale, for example, is made between respondent and the customer. Payments for the products are made by check payable to either respondent or

the salesman or by case payable to the salesman.  Respondent furnishes a suggested retail price for its products, but salesmen are not bound by the price.  They may even barter for the products.

Respondent extends credit to customers on the basis of prior approved credit applications, which must be obtained by the salesmen.  When credit is approved and established, it is the responsibility of respondent to collect from the customer.  Salesmen may also extend credit to customers.  They are liable to respondent, however, for the costs of goods sold.  When salesmen order products, the wholesale purchase price is charged to the account of the salesman and he is individually responsible for loss, damage and contamination.  The salesman may return the merchandise upon express approval, however, and receive a credit.  Commissions are paid to the salesmen weekly, and the amount of the commission is the difference between customer sales price and the wholesale price.

Respondent maintains five company warehouses or merchandise banks in Montana.  Salesmen are also permitted to have storage facilities, but must first receive permission from the company and must build them at their own expense.  Approximately 20 to 30 percent of the salesmen have storage facilities.  Merchandise is generally delivered to the company warehouses by respondent and may be picked up there by customers.  There is a conflict in the testimony as to whether respondent delivers orders directly to customers.

Both respondent and its salesmen have the right to terminate their contract at any time.  At the conclusion of the relationship, salesmen leave with only a customer list and perhaps a greater knowledge of the nutritional needs of

livestock.

This appeal arises out of a determination made by the Employment Security Division and the State Board of Labor Appeals that respondent's salesmen were "employees" within the terms of the provisions of Title 39, Chapter 51, Montana Code Annotated. Respondent filed an action in District Court to overturn those administrative decisions. On May 7, 1979, the District Court granted respondent judgment, holding that respondent was not subject to unemployment compensation tax on those persons acting as its salesmen.

The following issue is raised for our consideration on appeal:

Whether the District Court erred in determining that respondent's salesmen were "independent contractors" and were therefore exempt from unemployment compensation tax on those persons pursuant to Title 39, Chapter 51, Montana Code Annotated.

This Court has previously used two tests as guidelines in determining whether services performed by an individual for wages are deemed employment or are those of an independent contractor. See St. Regis Paper Co. v. Unemployment Comp. Comm'n (1971), 157 Mont. 548, 487 P.2d 524; Pat Griffin Co. v. Employment Security Comm'n (1974), 163 Mont. 529, 519 P.2d 147. The first test is the so-called "ABC" test and is established by statute:

> "Service performed by an individual for wages is considered to be employment subject to this chapter unless and until it is shown to the satisfaction of the division that:
>
> "(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact;

-4-

"(B) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) such individual is customarily engaged in an independently established trade, occupation, profession, or business." Section 39-51-203(4), MCA.

Wages are defined in section 39-51-201, MCA, as ". . . all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash."

All three of the stated conditions must exist or the services performed will be deemed to be employment. Griffin, supra, at 533, 519 P.2d at 150. The statute shall be reasonably applied and will not be distorted to allow persons who are truly independent in their operations to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship. Griffin, supra. To keep the distortion at a minimum, this Court has used another test derived from common law principles as an additional guideline:

"While section 87-148(j)(5), R.C.M. 1947 [now section 39-51-203(4), MCA], is used as a guide in the determination of the relationship between an employer and an individual performing services, the well-established test in determining whether an individual is an employee or an independent contractor is also a guide to be used. As we did in St. Regis, we here reiterate this test as expressed in Shope v. City of Billings, 85 Mont. 302, 306, 278 P. 826, 827:

"'An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually not paid by the job. (And see Neyman v. Pincus, 82 Mont. 467, 267 P. 805.)'

". . .

"The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." Griffin, 519 P.2d at 150.

In this case, two administrative bodies, the Employment Security Division and the State Board of Labor Appeals, were confronted with a mixed question of law and fact, namely whether respondent's salesmen might be deemed to stand in the relationship of "employment." That question not only involved the determination of several underlying facts to establish the economic relationship between respondent and its salesmen, but it also involved the specific application of a statute containing a broad statutory term. In questions of this kind, where the agency is entrusted and charged with administering the statute and making necessary, initial factual determinations, it is well settled that a reviewing court's function is limited. Where factual determinations are warranted by the record and have a reasonable basis in law, they are to be accepted. It is not the court's function to substitute its own inferences of fact for those of an administrative tribunal or agency, where facts are supported by evidence in the record. NLRB v. Hearst Publications (1943), 322 U.S. 111, 133, 64 S.Ct. 851, 860, 88 L.Ed. 1170, 1185.

Section 2-4-704, MCA states:

"(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

-6-

"(a) in violation of constitutional or statutory provisions;

"(b) in excess of the statutory authority of the agency;

"(c) made upon unlawful procedure;

"(d) affected by other error of law;

"(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

"(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

"(g) because findings of fact, upon issue essential to the decision, were not made although requested.

Here, the Employment Security Division and the State Board determined that, for unemployment compensation tax purposes, respondent's salesmen were employees. The District Court overturned those determinations and held that they were clearly erroneous in view of the reliable, probative and sustantial evidence on the record. The court then found that respondent's salesmen were "independent contractors." Upon this appeal, we are confronted with the task of determining whether the District Court committed an abuse of discretion.

At the outset, we recognize that the element of right of control is the most crucial factor which distinguishes "employees" from "independent contractors." This element is common to both the "ABC" and common law tests. We also recognize that the right of control is a very close question under the particular facts and circumstances of this case. There are several factors which suggest that respondent retained the right to control its salesmen: salesmen were recruited by a division manager; they purchased $40.00 sales kits; they were assigned to particular territories in which

they could distribute products; respondent recommended sales prices for its products; sales were made on respondent's contracts and forms; and respondent extended credit to customers. There are also several other factors which suggest that respondent did not have the right of control: salesmen received no formal training; they could work part-time; they furnished their own transportation and paid their own expenses; they could deviate from the recommended price and barter for products; they could extend credit to customers; they were not required to file reports; and they were responsible for damage, loss or contamination.

Where the issue of control is so close and there is sufficient credible evidence on the record which would allow reaching opposite conclusions, we think that a finding which overturns another as being "clearly erroneous" is an abuse of discretion. Where the District Court's reviewing function is limited, as in this case, the findings of administrative agencies and tribunals must be sustained where there is sufficient credible evidence in the record.

In view of the closeness of this case, however, we also feel it is necessary to consider another element of the "ABC" test, which is controlling in our jurisdiction. That test, unlike the common law test, goes beyond the issue of control.

In particular, we make reference to element "C" of the "ABC" test, the question of whether an individual is customarily engaged in an independently established trade, occupation, profession or business. To uphold the findings of the District Court, we must be able to say that respondent's salesmen here are customarily engaged in an independently established trade, occupation or business.

We have never had occasion to construe or interpret what is meant by an "independently established business" under part "C" of section 39-51-203(4), MCA. Several other jurisdictions with statutes identical to ours, however, have interpreted the phrase. In Vermont, for example, an "independently established business" is an enterprise in which a claimant is able to engage in an independent activity without any hindrance from any individual whatsoever. Vermont Securities, Inc. v. Unemployment Compensation Comm'n (1954), 118 Vt. 196, 201, 104 A.2d 915, 917; Bluto v. Dep't of Employment Sec. (1977), 135 Vt. 205, 373 A.2d 518, 521. In Maine, an "independently established business" is an enterprise in which an individual has a proprietary interest to the extent that he could operate without hindrance from any source. Hasco Manufacturing Co. v. Maine Employ. Sec. Comm'n (1962), 158 Me. 413, 185 A.2d 442, 445; Fournier v. Maine Employ. Sec. Comm'n (1965), 161 Me. 48, 206 A.2d 925, 926. Illinois also adopts the "proprietary interest" test. Hart v. Johnson (1979), 68 Ill.App.3d 968, 386 N.E.2d 623. In Hart, the Illinois court stated:

> ". . . it is apparent that the act contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance from any individual whatsoever and whose business also is free from control. Here, the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment . . . Although appellant urges that the individuals were free to carry other lines, it is a fact that there is no evidence that any individuals did so. [Citation omitted.]" Hart, 386 N.E.2d at 629.

An "independently established business" in New Jersey is one that will survive the termination of a particular service relationship. In Gilchrist v. Division of Employment

Security (1957), 48 N.J.Super. 147, 137 A.2d 29, 35, the New
Jersey court stated:

> "The fact that a salesman who works on commission
> must rely on his efforts and ability to secure
> orders to make a livelihood does not necessarily
> mean that he is working for himself as an entre-
> preneur or businessman, within the intendment of
> test C. The double requirement that an indivi-
> dual must be 'customarily engaged' and 'independently
> established' calls for an enterprise that exists
> and can continue to exist independently of and
> apart from the particular service relationship.
> The enterprise must be one which is stable and
> lasting--one that will survive the termination
> of the relationship."

We also note with interest several other states within

this jurisdiction that have statutes similar to ours.

Idaho, Oregon and Utah have statutes which contain parts "A"

and "C" of the "ABC" test.  Part "C" of those statutes adds

that the "independently established business" must be "of

the same nature as a contract for service."  Idaho has

established three factors to be considered in determining

whether an individual is engaged in an independent business:

(1) Does the worker have authority to hire subordinates?

(2) Does the worker own major items of equipment? (3) Would

either party be liable to the other for a preemptory termin-

ation of the business relationship?  Hammond v. Dep't of

Employment (1971), 94 Idaho 66, 480 P.2d 912, 914; Swayne v.

Dep't of Employment (1969), 93 Idaho 101, 456 P.2d 268, 272.

In Utah importance is placed upon the independence of

the business.  An "independently established business" must

exist independent of the services under consideration in the

sense that it is the whole  of which the particular service

is a part.  Leach v. Board of Review of Industrial Com'n

(1953), 123 Utah 423, 260 P.2d 744, 748.

In Oregon, case law holds that an independently estab-

lished business is an enterprise which is created and exists

apart from a relationship with a particular employee and which

survives the termination of that realtionship. The con-
tinued existence of the business does not depend upon a
relationship with a particular employer. Timberland
Sales, Inc. v. Employment Division (1975), 20 Or.App. 192,
530 P.2d 880, 883-884; Kirkpatrick v. Peet (1967), 247 Or.
204, 428 P.2d 405, 409-10; Baker v. Cameron (1965), 240 Or.
354, 401 P.2d 691, 696. The Oregon legislature has also
enunciated additional criteria to determine whether an
enterprise is an independently established business:

> "(A) The individual customarily has two or
> more effective contracts. (B) The individual
> as a normal business practice utilizes sep-
> arate telephone service, business cards and
> engages in such commercial advertising as is
> customary in operating similar businesses.
> (C) The individual is recognized by the De-
> partment of Revenue as an employer. (D) The
> individual furnishes substantially all of the
> equipment, tools and supplies necessary in
> carrying out his contractual obligations to
> his clients." Or.Rev.Stat. § 657.040

In this case, both the Board and the District Court
entered specific findings with respect to part "C" of the
"ABC" test. The Board stated:

> "The salesmen were not engaged in independently
> established businesses as a result of their as-
> sociation with the company, and would not have
> saleable businesses if they terminated their
> relationship with the company. They were not
> engaged in independently established businesses,
> but merely salesmen who worked on a commission
> basis."

The District Court stated:

> ". . . The salesmen are livestock 'nutritional
> experts' capable of analyzing and adjusting the
> nutrition of their customer's livestock. [Cita-
> tions to transcript omitted.] This is a skill
> they could sell after their relationship with
> Standard Chemical is ended. It does not matter
> that they would not have a business to sell. A
> lawyer, for example, does not have a saleable
> business, only a marketable skill. Thus, it is
> clear that the third requirement of the 'ABC'
> test is fulfilled."

Upon a review of the record before us, we find that the District Court abused its discretion in holding that respondent's salesmen were independent contractors and were not subject to unemployment compensation benefits. Respondent's salesmen here are employees. They have no independently established business of their own. Their "business" does not exist independently and apart from their relationship with respondent. They are, rather, dependent upon respondent for their employment. Should their relationship with respondent terminate, their "business" would also terminate as well. They have no authority to hire subordinates; they have the right, as does respondent, to terminate their employment; and, they have no liability for a peremptory termination of their relationship. It is also doubtful whether respondent's salesmen may truly be called "nutritional experts." There is little formal training the salesman receive from which to gain such expertise. Respondent only occasionally assists its salesmen in determining customers' nutritional needs and in problems relating to toxicity. For these reasons, we hold that the District Court abused its discretion and that respondent's salesmen are employees.

Accordingly, the judgment of the District Court is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-12-