No. 83-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN THE MATTER OF THE WAGE CLAIMS OF
PAUL CHAGNON and LINDEN CHAGNON,

        Petitioners and Respondents,

-vs-

HARDY CONSTRUCTION COMPANY, and the
LABOR STANDARDS DIVISION, DEPT. OF
LABOR AND INDUSTRY, STATE OF MONTANA,

        Respondents and Appellants.

---

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        McNamer, Thompson & Cashmore; James Thompson argued
for Hardy Construction, Billings, Montana
William P. Richardson aruged, Dept. of Labor,
Helena, Montana

    For Respondents:

        Altman & Lilletvedt; J. Brian Lilletvedt argued for
Paul & Linden Chagnon, Havre, Montana

---

              Submitted: 11/28/83

              Decided: 3/23/84

Filed: MAR 2? 1984

*Ethl M. ____*

---

              Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from an order of the District Court of Hill County reversing the determination of the hearing officer of the Department of Labor and Industry. We reverse the District Court and reinstate the determination of the Department of Labor and Industry.

This case arose from wage claims which were filed by Paul Chagnon and Linden Chagnon against Hardy Construction Company, with the Commissioner, Department of Labor and Industry, State of Montana. An administrative hearing was held on July 8, 1982, before John Andrew, a hearing officer for the Commissioner, in Havre, Montana.

Those present at the hearing included Paul and Linden Chagnon and their attorney, Les Hardy, president of Hardy Construction, and its attorney, as well as Dave Roseman, business manager of the Central Montana District Council of Carpenters and Larry Paulson, Superintendent for Hardy Construction at the Buttrey/Osco project in Havre. During the hearing, the hearing officer heard the testimony of the Chagnons, Hardy, Roseman and Paulson and evidence was introduced both in support of and in opposition to the wage claims.

The Commissioner's hearing officer issued findings of fact, conclusions of law and an order on July 16, 1982. The hearing officer ordered that the wage claim of the Chagnons be dismissed.

On August 11, 1982, the Chagnons filed a petition for judicial review with the District Court for the Twelfth Judicial District, in and for the County of Hill. Hardy and the Commissioner appeared and answered the petition. After

2

briefs and arguments, the District Court issued an order reversing the order of the Commissioner and awarding wages, penalties, costs and attorney fees to the Chagnons. Both the Commissioner and Hardy now appeal the District Court's order.

Several issues are raised by the parties but essentially one is dispositive of the matter: Did the District Court err under section 2-4-704, MCA, by substituting its judgment for the determination of the Department.

The scope and appropriate standard of judicial review of an administrative agency decision is set forth in section 2-4-704, MCA:

> "Standards of review. (1) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency not shown in the record, proof thereof may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
>
> "(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> ". . .
>
> "(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;" (Emphasis added.)

The District Court reversed the Department of Labor and Industry and substituted its own findings on the basis of section 2-4-704(e), MCA, which allows such action if the agency's decision is ". . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole

record." While the standard cited by the court is proper, we find nevertheless that under the circumstances of this case the District Court erred in substituting its judgment in place of that of the agency. We have discussed the proper standard of review in previous cases and in Martinez v. Yellowstone County Welfare Department (Mont. 1981), 626 P.2d 242, 38 St.Rep. 474, we stated the following:

> "In reaching its determination to reverse, the District Court reviewed the entire record, and in effect, redetermined the credibility of the witnesses and the weight given to evidence by the Commission. The scope of review of a District Court regarding agency determinations is governed by section 2-4-704, MCA . . .
>
> "The effect of this provision [of the statute] is to limit a reviewing District Court to a determination of whether or not substantial evidence exists to support the agency decision.
>
> "This Court spoke to that issue in Standard Chemical Manufacturing Company v. Employment Security Division (1980), ___ Mont. ___, 605 P.2d 610, 613, 37 St.Rep. 105, 108, stating that:
>
> "'. . . In questions of this kind, where the agency is entrusted and charged with administering the statute and making necessary, initial factual determinations, it is well settled that a reviewing court's function is limited. Where factual determinations are warranted by the record and have a reasonable basis in law, they are to be accepted. It is not the court's function to substitute its own inferences of fact for those of an administrative tribunal or agency, where facts are supported by the evidence in the record.'"

Further, in Bronken's Goodtime Co. v. Bishop (Mont. 1982), 664 P.2d 292, 39 St.Rep. 2165, we stated:

> ". . . A court may not reverse the agency decision unless substantial rights of the appellant have been prejudiced because the agency determination was clearly erroneous in light of the reliable, probative and substantial evidence

4

> (section 2-4-704(2)(e), MCA). Also, a
> reviewing court may not substitute its
> judgment for that of the agency's as to
> the weight of the evidence on questions
> of fact (section 2-4-704(2), MCA). In
> Montana Wilderness Association [State ex
> rel. Montana Wilderness et al. v. Board
> of Natural Resources and Conservation et
> al. (Mont. 1982), 648 P.2d 734, 39
> St.Rep. 1238], supra, we noted that our
> review was limited to determining whether
> the administrative body's decision was
> supported by substantial evidence."

We have reviewed the transcript of testimony and documentary evidence presented. There is clearly sufficient evidence to support the hearing officer's determination in favor of Hardy.

The scope of review of administrative agency decisions is exceedingly clear. In addition, we have consistently held that the District Court cannot properly substitute its own judgment for that of the agency. Consequently, we hold that it was error for the District Court to reverse the Department of Labor and Industry's ruling and we herewith reverse the judgment of the District Court and reinstate the determination of the Department.

The second issue is whether attorney fees should be awarded and, if so, to whom they should be given. It is a well-settled principle that attorney fees are allowable only when provided for by contract or statute. Thornton v. Commissioner of Department of Labor and Industry (Mont. 1980), 621 P.2d 1062, 37 St.Rep. 2026. In this case, section 39-3-214, MCA, represents the authority for a determination on this issue. It reads, in pertinent part, as follows:

> "Court costs and attorneys' fees. (1)
> Whenever it is necessary for the employee
> to enter or maintain a suit at law for
> the recovery or collection of wages due
> as provided for by this part, a resulting
> judgment must include a reasonable attor-
> ney's fee in favor of the successful

party, to be taxed as part of the costs in the case.

"(2) Any judgment for the plaintiff in a proceeding pursuant to this part must include all costs reasonably incurred in connection with the proceeding, including attorneys' fees."

We have held previously that an administrative hearing is not a "suit at law." In addition, a "determination" made by the Commissioner is not a "judgment." Thornton, 621 P.2d at 1066. Therefore, it would be improper to award fees to any party for services rendered at the administrative agency level. However, section 39-3-214, MCA, provides that the resulting judgment of a suit at law include reasonable attorney fees in favor of the successful party. Consequently, since Hardy Construction is the successful party, we hereby award attorney fees for services rendered at both the District Court and Supreme Court levels of the proceedings.

In summary, we hold:

(1) The District Court erred in reversing the determination of the Department of Labor and Industry and substituting its judgment for that of the agency; and,

(2) Attorney fees be awarded Hardy Construction for services rendered for the District Court and Supreme Court proceedings.

Reversed and remanded to the District Court for determination of attorney fees.

_Frank I. Haswell_
_____
Chief Justice

6

We concur:

_John Conway Harrison_

_W.C. Gulbrandson_

_[signature]_

_____

_____

_____
            Justices


Mr. Justices Shea, Sheehy and Morrison dissent and will file
written dissents later.

DISSENT OF MR. JUSTICE JOHN C. SHEEHY

---

No. 83-232

---

IN THE MATTER OF THE WAGE CLAIMS
OF PAUL CHAGNON and LINDEN CHAGNON,

Petitioners and Respondents,

vs.

HARDY CONSTRUCTION COMPANY, and the
LABOR STANDARDS DIVISION, DEPARTMENT
OF LABOR AND INDUSTRY, STATE OF MONTANA,

Respondents and Appellants.

Majority Opinion Decided:  March 23, 1984

FILED

JUL 33 1934

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice John C. Sheehy, dissenting to the majority opinion, and dissenting to the order denying rehearing:

The majority opinion is a faulty judicial effort. It purports to find "clearly sufficient evidence," upon which to support the hearing officer's determination in favor of Hardy. Yet not a smidgeon of that "clearly sufficient" evidence is set forth in the majority opinion in support of the conclusion.

Because I find the facts completely supportive of the decision made by the District Court in reversing the hearing officer, I dissent to the majority opinion; and because of my optimistic belief that the majority must have overlooked these substantive facts, I would grant rehearing.

Here is what happened in this case, taken from the Agency transcript:

Paul Chagnon and Linden Chagnon, father and son, reside in Havre, Montana. Hardy Construction Company has its principal office in Billings. Hardy Construction Company was the general contractor involved in construction of the Buttrey-Osco building in Havre in 1981.

Larry Paulson was the superintendent on the Buttrey-Osco job for Hardy Construction. Paul Chagnon obtained employment from Larry Paulson on the Havre job, commencing April 5, 1981. Paul Chagnon requested employment for his son, Linden, from Mr. Paulson as an apprentice carpenter. Linden began work on July 5, 1981. Paul worked on the job through September 20, 1981; Linden worked through September 20, 1981, and did some additional work during the week of October 11, 1981.

Paul and Linden were members of the local carpenters trade union. At the time that Paul sought employment from Hardy Construction, Larry Paulson asked Paul if he were a member of the carpenters union to which Paul replied he was. Paulson at that time stated that Hardy Construction was also union. When Linden requested employment, he was also asked if he was a union member and Linden replied that he was. The union pay scale for Paul Chagnon, a carpenter, was $11.13 an hour. The prevailing union rate for a carpenter-apprentice was $9.54.

It developed that although Hardy Construction Company operates as a union employer in the Billings area, it did not do so in Havre, although on occasions, it signed "short agreements," that is, agreements to be bound by the union prevailing wage rates and fringe benefits in the area where the job was being completed.

When Paul Chagnon received his first paycheck, he discovered it was computed at a rate of 50 cents an hour under the union scale. He immediately told the job superintendent about the shortage, and Paulson said he would take care of it. The shortage was not cleared up the first week and Paul threatened to quit the job if Hardy was not going to pay him union scale. The job superintendent did get the shortage resolved and Paul Chagnon was paid back-pay to make up the difference between what he had been paid and the union scale, and his next checks arrived at the proper union rate. On May 1, 1981, the union scale increased for carpenters to $11.93 per hour. The increased rate was not automatically paid by Hardy Construction; again Paul brought this to the attention of Paulson. Paulson said he would take care of it. Paul Chagnon wrote on his time card the new

union scale. The information went into the Hardy Construction Company main office in Billings. The next week Hardy Construction Company paid Paul at the new rate.

Linden Chagnon's paychecks were computed always at the rate of $9.54 an hour, the prevailing union rate for an apprentice carpenter.

In addition to the hourly rate, the union pay package for carpenters and apprentices included pensions, health and welfare contributions to be paid by the employer. Until May 1, 1981, the hourly value of these fringe benefits for a carpenter was $2.05 and after May 1, 1981, was $2.15. For an apprentice, such as Linden, the fringe benefits had an hourly value of $2.15.

The union package also required that the employer deduct 50 cents an hour from each employee for a vacation trust fund. This is a deduction from the employees' pay and not a contribution by the employer. Hardy Construction, in this case, deducted 50 cents an hour from both Paul and Linden for each hour they worked for Hardy Construction; there was no agreement or discussion between them about such deductions for vacation pay. It was done automatically by Hardy Construction Company. This would have been true in the case of any union job, and Paul and Linden believed that these deductions for vacation were being paid into the union vacation trust fund.

The fringe benefits are contributions made by the employer directed to the union. The contributions are not reflected on the pay stubs of the employees. It was not until Paul and Linden saw a union publication some three months later that they realized that the fringe benefits had not been paid on their behalf by Hardy Construction Company.

Again, Paul Chagnon complained to Larry Paulson and again threatened to quit if Hardy Construction was not going to pay the union package. Larry Paulson told Paul Chagnon that everything would be taken care of. Chagnon did not learn that the vacation pay deductions had not been paid to the trust fund by Hardy Construction until after their employment had terminated.

At the end of the job, Hardy Construction did refund to Paul and Linden Chagnon all of the vacation deductions made by it. No contributions were made for fringe benefits. The claim of Paul and Linden in this case relates to their fringe benefits, since they had been paid the union wages.

On this statement of facts, the hearing examiner for the Department of Labor and Industry found in favor of Hardy Construction. Paul and Linden Chagnon appealed to the District Court and the District Court reversed the Department of Labor and Industry, and ordered that the fringe benefits as well as penalties and attorneys fees be paid to the Chagnons.

The majority of this Court, in the opinion promulgated in this case, have reversed the District Court, stating without support that clearly sufficient evidence supports the hearing examiner. To me that position is inexplicable.

On its appeal to this Court, Hardy Construction, in addition to claiming that the decision of the District Court was incorrect, raised additional issues that fringe benefits are not "wages," that the employee was not entitled to attorney fees, and that the penalties begin only after final judgment was entered in the District Court. These issues have been short-circuited because of the route taken for decision by the majority.

The evidence in this case is beyond rebuttal that the Chagnons would not have continued working for Hardy Construction if they were not being paid union scale on the job. They continued to work for Hardy Construction because they were led to believe by Hardy Construction that their employment was one for union scale. When Hardy Construction defaulted on the perceived contract between it and the Chagnons, the employees sought redress before the Department of Labor and Industry, and then before the District Court. As a result of the majority action in this case, the Chagnons lose not only the fringe benefits which they earned on the job but they must now pay Hardy Construction Company's attorney fees for daring to claim those fringe benefits. Such, I am sad to relate, are the possible vagaries of this Court.

John C. Sheehy
Justice

DISSENTING OPINION

No. 83-232                              Justice   Daniel   J.   Shea

IN THE MATTER OF THE WAGE
CLAIMS OF PAUL CHAGNON AND
LINDA CHAGNON,

     Petitioners and Respondents,

     vs.

HARDY CONSTRUCTION COMPANY,
and the LABOR STANDARDS DIVISION,
DEPT. OF LABOR AND INDUSTRY,
STATE OF MONTANA,

     Respondents and Appellants.



FILED

JAN 3 - 1985

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, dissenting:

I dissent. Issues were raised before the hearing examiner that were never decided. As a result, neither the Department of Labor and Industry nor the District Court could rule on the merits of the case until the factual disputes were resolved by the hearing examiner.

This Court has previously held in effect, that whenever issues are raised by the parties and the trial court failed to make a record as to those issues, remand is appropriate to make that record. For example, in Diede v. Davis (Mont. 1983), 661 P.2d 838, 843-844, 40 St.Rep. 394, the District Court record failed to establish in what months certain vehicle repairs were made. Without that determination, it could not be known which, if any, of those repairs were necessary and therefore recoverable and In Wippert v. Blackfeet Tribe of Blackfeet Indian Reservation (Mont. 1982), 654 P.2d 512, 39 St.Rep. 2117, the complaint laid the foundation for inquiry into the amount of a tribal court judgment. We ruled remand was necessary for a determination of that amount.

Here also, issues were raised below, and not decided. There is no reasonable path to follow except to remand the matter for a determination of those issues.

Daniel J. Shea
Justice